**Lisa Ayn PADILLA, Plaintiff,**

v.

**PAYCO GENERAL AMERICAN CREDITS, INC., Defendant.**

**No. 00 CIV. 3870(RWS).**

United States District Court, S.D. New York.

Aug. 1, 2001.

Lisa Ayn Padilla, White Plains, NY, Plaintiff Pro Se.

Jacobowitz, Garfinkel & Lesman, New York, By Kevin Barry McHugh, Esq., Of Counsel, for Defendant.

## OPINION

SWEET, District Judge.

Defendant Payco General American Credits, Inc., n/k/a OSI Collection Service, Inc. ("Payco") has moved for summary judgment and attorneys' fees pursuant to Fed.R.Civ.P. 56. Plaintiff Lisa Ayn Padilla ("Padilla"), an attorney proceeding *pro se*, has opposed the motion and cross filed for summary judgment and "pro se attorney's fees." For the reasons set forth below, the motions will be granted in part and denied in part.

### The Parties

Padilla is an attorney who resides in New York and is admitted to the New York bar.

Defendant Payco is a debt collection corporation with headquarters in Ohio which

has attempted to collect debt from Padilla arising out of student loans that were guaranteed by non-party, USA Funds ("USAF").

### Facts

### The Loan, Default, and Referral to Payco

The gravamen of the amended complaint is that Payco violated various laws while attempting to collect student loans Padilla used to finance her college and law school education. The relationship between the parties began when Padilla executed a series of promissory notes, which were subsequently consolidated with Sallie Mae.[1] She alleges that the notes did not include a rate of interest on the consolidated loans, but did include provisions that simple interest would be calculated on the unpaid principal, and that she could pre-pay principal without penalty. In addition, the notes provided for the assessment of reasonable collection fees in the event of her default.

Padilla alleges that the loans were improperly placed in default on July 24, 1990, while she was attending Boston University's School of Law Taxation Program and taking sufficient credits to warrant loan deferral. Sallie Mae reports that Padilla defaulted on the loan on August 31, 1991, then in the principal amount of $34,588,45. (Cline Aff.) USAF reimbursed Sallie Mae on or about that date and referred the case to Payco for collection on September 11, 1991. (Id.; Apr. 27, 2001 Nash Aff.) In October 1990, Padilla was involved in a severe car accident that incapacitated her for a period of time thereafter, during which she made no payments.

### Inaccurate Reporting of Loan Status

Although she states that she has timely paid the agreed-upon amount of $231.97 per month since October 1993, Padilla alleges that Payco has inaccurately reported to credit agencies her payment history. Payco contends that it never reported any false information about her debt to anyone. (Nash Aff. Ex. A.) Moreover, Payco contends that it notified Padilla repeatedly in 1993 that monthly payments of $231.97 would be insufficient to cover even the interest that continued to accrue, but that she persisted in sending checks for that amount. (May 21, 2001 Nash Aff.)

### Improper Contact with Third Parties

In the spring of 1997, Payco contacted Padilla at home regarding the loans, which by June 6 had grown to $42,552.32 plus $8,116.83 in interest. She returned the call from her workplace and requested that Payco not telephone her, but that she would contact them. Payco nonetheless repeatedly called her at work.

■ She alleges that Payco employees Ron James and Gary Wagner improperly contacted her employer and asked the receptionist to give them information about Padilla's salary and pay schedule. (Amd. Compl.) Her motion alleges that Wagner told the receptionist that Padilla had defaulted on her loan (Pltf. Opp. Br. Ex. C at 9–10), but facts alleged in legal briefs are not appropriately considered. See, e.g., O'Brien v. National Property Analysts Partners, 719 F.Supp. 222, 229 (S.D.N.Y. 1989) (stating that "it is axiomatic that the complaint cannot be amended by the briefs in opposition to a motion to dismiss").

---

1. Although the amended complaint refers to the Sallie Mae consolidation as Exhibit A, no exhibit was attached. Illegible copies of the form were subsequently submitted by both parties in support of their respective summary judgment motions, and Padilla submitted a more legible copy as Exhibit A to her Reply to Payco's opposition to her summary judgment motion.

Moreover, Padilla's contention is directly contradicted by the evidence she has submitted. When asked during her deposition to state specifically what Payco agents said to the receptionist, Padilla stated that the receptionist told her the following:

> She said, who was this guy who was telling me all this stuff, looking for human resources, wanted to know whether you worked there, whether or not you got paid regularly... She told me that Payco called, she told me that whoever it was was looking for information about me, about my position and about payroll time, that he wanted to talk to human resources and I think that's it.

(Pltf. Opp. Br. Ex. E at 77, 78–9.) Padilla has not submitted an affidavit from the receptionist. Payco's records reflect that although Payco agents spoke with the receptionist on several occasions in an attempt to reach Padilla, they did not discuss Padilla's loan in those calls. (Apr. 27, 2001 Nash Aff.; Pltf. Opp. Br. Ex. D.[2]) The only entries that reflect any substantive conversation were three calls seeking to speak to human resources on July 15 at 8:57am [3], 9:59 am [4], and 2:17 pm.[5]

### Threats

Padilla contends that Payco threatened that her default status authorized them to renege on their agreement and to refer her case for further collection proceedings, and to attach her paycheck and IRS re-fund, if any. However, they never did so, and Padilla asserts that the threats were made with no intention actually to carry them out, but solely to harass her.

### Demanding Post–Dated Checks

Instead, she alleges that during a telephone conversation on June 19, Payco employee Gary Wagner demanded an additional twelve post-dated checks for the monthly amount of $231.97 to cover the $10,000 shortfall in exchange for refraining from further collection efforts. (Amd. Compl.; Pltf. Opp. Br. Ex. E at 96.) Payco has no records reflecting such a demand and notes that all of its employees were aware that such a demand would violate Massachusetts law. (May 21, 2001 Nash Aff.) The telephone log reflects that a Payco employee called Padilla on June 19 to ask whether she had sent in payment in full, but she stated that she did not have the money but thought she might be able to pay $10,000 down in 30 days if she received something in writing, but would continue to make monthly payments. (Pltf.Opp.Br.Ex. D.) [6] Padilla's notes of the June 19 conversation reflect that Payco "recommends post dated checks" (Pltf.Opp.Br.Ex. D.)

### Oral Agreement to Remit $10,000 Toward Principal

Padilla alleges that in August, 1997, she and Payco orally agreed that she would remit $10,000 toward principal, and that Payco would remove references to the late

---

**2.** The phone log from 1997 reflects that the receptionist answered on June 18 at 8:39 am ("NI/ETA 9:30 AM"), June19 at 10:49 am ("NI/ETA 1HR"), 12:05 pm ("IN MEETING/ETA 2HRS").

**3.** "CLLD TO VERF EMPLYMNT. SD I NEED TO TLK TO GENE PAYNE. SD TO CB IN FEW MIN."

**4.** "PJ TT RECPT SD GENE PAYNE IS IN A MEETING."

**5.** "PH TT RECPT SD H/R/ NI/ETA 3PM."

**6.** The 3:56 pm entry states: "PJ TT DBT/ VERF IF DBT SENT BIF/DBT SD SHE DOES NOT HV THE $/DBT CLAIMS SHE THGHT SHE WLD HV THE $ RESOURCES TO PAY/ DBT SD SHE MAY BE ABLE TO PY $10000 DWN IN 30 DYS/ OFFERED REHAB/ DBT SD NEEDS IT IN WRITING/ADVSD DBT UNABLE TO PROVIDE INFORMATION/DBT SD SHE WILL CONT TO MK PYTS."

payment in her credit report to reflect current pay status, and would "zero out" attorneys' and collection fees. At the time of this agreement, Payco allegedly refused to record it in writing until it received the $10,000. Padilla's mother mailed a $10,000 check to Payco the same month stating "applied to principal" on the memo line.[7] Padilla alleges that Payco's promise to apply the $10,000 toward principal was a fraudulent misrepresentation, because it later refused to honor the agreement and instead applied the $10,000 toward the overdue interest pursuant to federal laws.[8]

Payco, on the other hand, contends that by law it must apply payments toward interest before principal, and that Padilla agreed to abide by this practice when she signed the notes. Payco's records do not reflect any agreement to apply the down payment toward principal, but do reflect that Padilla said she wanted to pay $10,000 down on principal only and continue paying $231 thereafter, and needed a letter to that effect before she would make the payment. (Apr. 27, 2001 Nash Aff.; Pltf. Opp. Br. Ex. D [9]) Padilla's datebook notes from July 17, 1997 reflect "said 10k to principal & waive collection fees," with "Says No" circled on the line below. (Pltf.Br.Ex. G.)

In support of its contention that no oral agreement was ever made to put the $10,000 toward principal rather than interest, Payco has submitted a letter to Padilla on August 8, 1997 stating "we are willing to accept the down payment on the above referenced account ... [but][t]his agreement does not in any way override or supersede the terms of the original promissory note, nor does this temporary repayment agreement change the status of the default." (Nash Aff. Ex. B.) Payco's telephone log entry for August 14, 1997 reflects that Padilla told the collection agent she wanted a letter from Payco stating that it would waive the collection fees but not to say that the agreement was contingent on timely payments. The entry reflects that the agent told her that he "cannot send that kind of letter" because the balance in full was due, but instead suggested that Payco would "take the 10k down" and then accept payments, to which she replied, "forget it," and hung up. (Pltf.Opp.Br.Ex. D.[10]) In addition, Payco

---

7. Although the amended complaints refers to the cancelled check as Exhibit B, no such document is attached. During a deposition, Payco employee Ronald James examined an unauthenticated August 30, 1997 check endorsed by Padilla, and noted that "applied to principal" was written on it. (Pltf. Br. Ex. H at 62.) Padilla submitted a copy of the check as Exhibit J to her motion.

8. Again, the amended complaint refers to USAF's statement of account as Exhibit C, but no such attachment exists.

9. The August 7, 1997, 12:18 pm entry reads: "DB: CLD SD THAT SHE WANTS TO PAY 10K DOWN ON PRINC ONLY THEN KEEP PAYING 231 A MO SO SHE WANTS A LTR SHOWING ITS GOING TO PRINC ONLY SO SHE NEEDS LTR BY WEEKEND SO WILL HAVE $ B4 MO END." At 5:40 the same day ·is the following: "DB–CLLD SD THAT SHE NEEDS LTR SO SHE WILL PAY 10K DOWN THEN 231 A MO SD WILL SEND OUT CK MON AM SD IF SHE HAS LTR BY 9AM FRI B4 SHE LEAVES SHE WILL B ABLE TO SEND OUT SHE IS GOING TO CALF FOR A WEEK SD FAX IT TO [fax number] THIS IS HER HOME FAX# SD THAT SHE WILL WAIT AT HOME FOR IT."

10. The actual notation FROM A 6:47 pm call is as follows: "DC. SD SHE WANTED A LTR SAYING WE WOULD WAIVE THE COLL FEES BUT NOT TO SAY CONTINGENT UPON TEIMLY PMNTS. I EXPLAINED I CANNOT SEND THAT KIND OF LTR. SHE STARTED WITH SHE WILL SUE FOR UNFAIR COLL FEES CT ETC. I EXPLAINED BIF IS DUE TAKE THE 10K DWN THEN PMNTS SHE SD FORGET IT SHE WILL PAY MONTHLY THEN H/U."

interprets Padilla's notes as meaning that Payco declined her offer to put $10,000 toward principal.

### Overcollection

In addition to violating their oral agreement, Padilla asserts that Payco is seeking to collect more than she owes. For example, Payco sent Padilla collection notices reflecting attorneys' fees in addition to collection fees—although, she alleges, no attorney was involved on Payco's behalf—in an effective attempt to collect double collection fees. Moreover, she contends that Payco is charging interest on interest already calculated by the original guarantor of her loan, USAF, which amounts to the assessment of compound interest in violation of the terms of the loan. Although she sought an accounting, none was received until she filed this action. In contrast, Payco contends that it sought to collect only those amounts referred to it as due to USAG, and that any interest added to the original amount was claimed upon USAG's instruction. (Nash Aff.)

### Procedural History

On July 2, 1998, Padilla filed a complaint against Payco in the District of Massachusetts. The action was transferred to this Court in May of 2000 upon Padilla's motion, after she moved from Massachusetts to New York. In October of 2000, Padilla notified the Honorable Theodore H. Katz of her intention to file a motion to amend the complaint to add USA Group, the "forerunner" to USAF, as a necessary party. Although discovery was almost completed, Judge Katz granted the request under the condition that the motion be filed by November 1, 2000. After several abortive attempts to file the proposed amended complaint, Padilla finally did so after discovery had been completed, on November 21, 2000, and was granted leave to revise it on November 22, 2000. However, Padilla failed to serve the proposed amended complaint on all parties by that date as required by Judge Katz's order. On February 27, 2001, Judge Katz struck all references to USA Group from the amended complaint. (Apr. 30, 2001 McHugh Aff. Ex. A at 5.) Therefore, the amended complaint, minus references to USAG, is the operative document in this dispositive motion.[11]

Both Padilla and Payco filed motions for summary judgment on April 4, 2001. After opposing briefs and materials were received, the motions were deemed fully submitted on May 30, 2001.

### Discussion

#### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment may be granted when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2, 106

---

11. Padilla is apparently under the erroneous impression that Judge Katz struck the entire amended complaint, and that the summary judgment motions pertain only to the original complaint. Judge Katz's order clearly states that only "that portion of the Amended Complaint that relates to the USA Group" was struck. Padilla has requested leave to file additional responsive papers if her belief is unfounded. (Pltf. Opp. Br. at 1.) In light of the clarity of the order striking only USAG and the history of dilatory tactics in this action, her request is denied.

S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)); *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir.1995); *Burrell v. City Univ.*, 894 F.Supp. 750, 757 (S.D.N.Y.1995). If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate. *See Burrell*, 894 F.Supp. at 758 (*citing Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991)).

Materiality is defined by the governing substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of factual issues— where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985).

While all reasonable ambiguities and inferences should be resolved against the moving party, those inferences must be supported by affirmative facts and must be based on relevant, admissible evidence. Fed.R.Civ.P. 56. A party seeking to defeat a summary judgment motion cannot " 'rely on mere speculation or conjecture as to the true nature of facts to overcome the motion.' " *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995) (citation omitted).

■ As a general rule, courts should make "reasonable allowances" and construe a pro se litigant's pleadings liberally in order "to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). However, Padilla is an attorney admitted to the New York bar and therefore does not merit this traditional pro se deference. *See, e.g., In re Martin–Trigona*, 763 F.2d 503, 505 (2d Cir.1985) (law school graduate proceeding pro se "can hardly expect the special allowances this court sometimes makes for pro se litigants who forfeit legal rights by inadvertent procedural mistakes."); *O'Brien v. Red Apple Group*, No. 97 Civ. 6378(SAS), 1998 WL 799672, *3 (S.D.N.Y. Nov.17, 1998) (refusing to exercise deference to pro se plaintiff because, "[h]aving attended law school and taken the bar exam, [plaintiff] should have more legal savvy than the average pro se plaintiff.").

## II. *The Motions Are Granted in Part and Denied in Part*

The amended complaint includes three headings purporting to state causes of action: one for "usurious interest" (Amd. Compl. at 12), another for "Misapplication of $10,000 Payment Against Principal," (*Id.* at 13), and a third claiming "other violations of the Fair Debt Collection Practices Act and other consumer protection statutes" (*Id.* at 14).

The only laws cited other than the Fair Debt Collection Practices Act ("FDCPA") are unspecified "Massachusetts and New York consumer protection statutes." (*Id.* ¶¶ 94–99.) However, Padilla's supplemental responses to interrogatories clarified that she also relies on 18 U.S.C. § 1343 (criminal wire fraud statute)[12]; 20 U.S.C.

---

**12.** This statute does not provide for a civil cause of action. *See Cort v. Ash*, 422 U.S. 66, 79–80, 95 S.Ct. 2080, 2089, 45 L.Ed.2d 26 (1975) (no civil cause of action where "there was nothing more than a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone.").

§ 1087(h)(1)(A) (Rehabilitation of Loans); 28 U.S.C. § 3012 (Federal Debt Procedures Act); N.Y. Gen. B. Law Art. 22–A §§ 349–50 (Consumer Protection from Deceptive Acts and Practices) and Art. 29–H § 600; Mass.G.L. ch. 93A; common law fraud; and breach of oral contract. (Pltf.Opp.Br.Ex. E.)

The prayer for relief seeks, *inter alia,* a finding that Payco has "forfeited the right to compound interest on the principal because of usury practiced and that amount of compound interest shall be applied to the reduction of principal; that the oral contract between Payco and plaintiff be enforced, and attorneys' and collection fees be waived from the total debt claimed to be owed by plaintiff;" and punitive damages for violation of the FDCPA, Massachusetts and New York consumer protection statutes, as well as "Payco's intentional tortious acts of fraud and misrepresentation."

Payco seeks summary judgment on four grounds: (1) Payco did not violate § 1692e of the FDCPA; (2) the complaint fails to state a claim for fraud or plead it with particularity as required by Fed.R.Civ.P. 9(b); (3) acts alleged to have taken place in August 1997, more than one year before the complaint was filed cannot be relied upon due to the statute of limitations; and (4) failure to state a claim for violations of specific Massachusetts and New York consumer protection statutes.[13]

Padilla's cross motion seeks summary judgment on the grounds that Payco violated the Fair Debt Collection Practices Act in five ways: (1) engaged in unauthorized communication with her employer and receptionist in violation of 15 U.S.C. § 1692c(b); (2) using false representations and deceptive means to collect or attempt to collect plaintiff's debt in violation of 15 U.S.C. § 1692e(10); (3) using unfair and unconscionable means by assessing collection costs of $933 per hour and (4) soliciting post-dated checks from her, in violation of 15 U.S.C. §§ 1692f(1) and 1692f(3); and (5) refusing to produce written notice of validation of her debt in violation of in violation of 15 U.S.C. § 1692g.[14]

## A. *The Fair Debt Collection Practices Act*

The Fair Debt Collection Practices Act ("FDCPA") was enacted to eliminate the use of "abusive, deceptive, and unfair debt collection practices by ... debt collectors." 15 U.S.C. § 1692(a), (e). The parties agree that Payco is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6). The FDCPA sets forth guidelines for debt collection in relevant part, as follows. Section 1692b limits authorized communication with third parties by a debt collector seeking to locate a debtor. Section 1692(c) regulates communication with the debtor, or "consumer," in the language of the statute. Specifically, that provision guides collectors to assume that it is appropriate to contact debtors between 8 am and 9 pm, not to contact a debtor at work if there is reason to believe that the employer prohibits such communication, and not to communicate with third parties absent certain

---

**13.** Payco's original contention that the complaint had not been served has been withdrawn in light of Padilla's submission of a waiver of service form signed by Payco's predecessor counsel on August 21, 1998.

**14.** This last ground will not be addressed here because the amended complaint cannot be construed to give rise a claim for violation of

§ 1692g. That provision requires debt collectors to provide a written accounting of the debt and explanation of its parameters within five days after the initial communication with the debtor. The amended complaint alleges that Payco failed to provide documentation in 1997 and 1998, years after their first communication in 1991.

exceptions. 15 U.S.C. §§ 1692c(a)(1), (3), 1692c(b).

Section 1692d prohibits contact intended to "harass, oppress or abuse" any person. 15 U.S.C. § 1692d, (5). Section 1692e prohibits debt collectors from making false or misleading representations in connection with the collection of a debt. Specifically, that subsection prohibits "the representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." 15 U.S.C. § 1692e(4). That section also prohibits "communicating ... to any person credit information which is known or which should be known to be false," 15 U.S.C. § 1692e(8), as well as "the use of any false representation or deceptive means to collect or attempt to collect any debt. . . ." 15 U.S.C. § 1692e(10). Finally, debt collectors may not solicit any postdated check "for the purpose of threatening or instituting criminal prosecution." 15 U.S.C. § 1692f.

### 1. *The Action is not Time–Barred*

The FCPDA allows aggrieved debtors to file suit "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Without citing any legal authority, Payco contends that this statute of limitations prohibits Padilla from raising any factual allegations that took place more than one year before July of 1998, when she first filed suit in Massachu-

setts.[15] However, the statute of limitations is not intended to deprive plaintiffs of the use of evidence of violations that took place more than a year before filing, but rather to protect defendants by ensuring that the action is filed within one year of the most recent date on which the defendant is alleged to have violated the FCPDA. *See Kaplan v. Assetcare, Inc.,* 88 F.Supp.2d 1355 (S.D.Fla.2000) (holding that complaint was filed within statute of limitations where four of debt collection service's dunning letters to debtor fell within statutory period, although first letter was filed outside the limitations period).

The complaint alleges that Payco fraudulently induced her to pay $10,000 by means of an oral promise made in August of 1997 (Amd.Compl.¶¶ 44, 47), and later violated their oral contract by depositing the check and crediting it to interest in September of 1997 (*Id.* ¶¶ 51, 52.) Regardless of the legal effect of such claims, these events are alleged to have taken place less than one year before Padilla filed this action.

Payco's statute of limitations motion is therefore denied.

### 2. *Payco May Assert an Inadvertent Error Defense*

Section 1692k also provides for the imposition of civil damages against a debt collector who violates the Act, unless "the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide

---

**15.** The amended complaint relates back to the date of filing the first complaint because the "the claim ... asserted in the amended [complaint] arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c). "The rationale underlying the relation-back doctrine is that one who has been given

adequate notice of litigation concerning a given transaction or occurrence has been provided with all the protection that statutes of limitations are designed to afford." *In re Chaus Securities Litigation,* 801 F.Supp. 1257, 1264 (S.D.N.Y.1992). Therefore, the original filing date is the operate date from which the statute of limitations should be calculated.

error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

Both Payco and Padilla have misinterpreted the effect of this provision. Contending that the FDCPA is a strict liability statute, Padilla seeks to bar Payco from asserting the affirmative defense of inadvertent error. (Pltf. Opp. Br. at 4–5.) Although courts have appropriately recognized that plaintiffs need not establish intent to prevail on a FDCPA claim, *see Russell v. Equifax,* 74 F.3d 30 (2d Cir. 1996), section 1692k specifically allows defendants to raise the affirmative defense of inadvertent error. Padilla's motion to preclude this affirmative defense is therefore denied.

Payco contends that "Plaintiff's claim as to the FDCPA fails because she cannot prove that Payco willfully made a false representation with regard to her debt...." (Def. Br. at 9.) As set forth above, however, the plaintiff need not prove *any* intent, much less willfulness, to prevail; rather, a defendant asserting the defense of inadvertent error has the burden of proving it by a preponderance of the evidence. 15 U.S.C. § 1692k.

### 3. *Payco Did Not Violate § 1692c(b) of the FDCPA by Speaking to Padilla's Receptionist*

■ Padilla alleges that the receptionist told her Payco had called asking about her salary, pay schedule, and employment status, this hearsay is not supported by an affidavit from the receptionist. Such an allegation, if true, could be a violation of 15 U.S.C. § 1692c(b), if the receptionist became aware that Payco was seeking to collect a debt. *See Austin v. Great Lakes Collection Bureau, Inc.,* 834 F.Supp. 557, 559 (D.Conn.1993). Yet a party may prevail in a summary judgment motion only upon the introduction of competent evidence, such as affidavits, not by means of bare hearsay assertions. *See* Fed.R.Civ.P. 56; *Austin,* 834 F.Supp. at 558, 559 (relying on unrebutted affidavit from plaintiff's secretary to find violation of § 1692c(b).) The only other evidence submitted pertaining to the conversation with the receptionist, Payco's telephone logs, reflect only that Payco on several occasions asked the receptionist to be connected to Padilla, and once asked the receptionist to verify Padilla's employment. This evidence does not reflect that Payco improperly communicated with the receptionist in connection with the collection of Padilla's debt.

In short, because the competent evidence presented does not make out a violation of § 1692c(b), summary judgment on this question is granted for Payco.

### 4. *Post–Dating Checks*

Debt collectors may not solicit post-dated checks "for the purpose of threatening or instituting criminal prosecution." 15 U.S.C. § 1692f(3). As Padilla has submitted no evidence, and in fact has not argued, that Payco solicited post-dated checks in connection with threatening a criminal prosecution, summary judgment is granted for Payco on this ground.

### 5. *The Application of $10,000 to Interest*

■ Padilla cites *Snide v. Larrow,* 62 N.Y.2d 633, 464 N.E.2d 480, 476 N.Y.S.2d 112 (1984), for the proposition that the "general rule is that the debtor may direct the application of his payments, but if he fails to do so, then the creditor is permitted to apply the payments as he sees fit." *Id.* at 634, 476 N.Y.S.2d 112, 464 N.E.2d 480. However, *Snide* involved a purchase contract in an ejectment action, not a student loan debt collection action such as this one, which is governed by the Higher Education Act ("HEA"), 20 U.S.C. § 1071,

*et seq.* Section II of the Sallie Mae consolidation agreement makes reference to the fact that is governed by the HEA. Regulations promulgated under the Act require that payments be applied first toward interest before they are applied toward principal. *See* 34 C.F.R. 682.404(f).

■ A federal statute preempts state law if the state law "stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *California Federal Savings & Loan Ass'n v. Guerra,* 479 U.S. 272, 280–81, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987). Congress has mandated that debtors and guarantors of a loan issued under the HEA not be able to contract around congressional intent that interest be paid before principal. As such, the state law provisions Padilla cites are preempted by federal law, and do not apply. The alleged oral contract to apply $10,000 toward principal only would have violated the HEA.

■ Two conclusions flow from this premise. First, summary judgment must be granted for Payco on the breach of oral contract claim because any oral agreement would have been unenforceable. Second, if it made such an agreement, Payco would have violated 15 U.S.C. § 1692e, which broadly prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The payment records and telephone logs reveal that Padilla had been paying only a bare minimum since 1993 and was very interested in paying $10,000 toward the principal only to reduce her debt. If a Payco employee had agreed to allow her to do so to induce her to remit the money, this would clearly constitute a "false, deceptive, or misleading representation."

Padilla claims that Payco entered into such an agreement with her, and Payco denies it. Although none of the telephone logs reflects that Payco either offered or agreed to undertake such an arrangement, this fact is not dispositive. These records are not verbatim transcripts of telephone conversations, and, more importantly, it is highly unlikely that such an event would have been recorded if indeed it took place, exactly because it would have recorded proof of a violation of the FDCPA. Payco employee Ron James testified at deposition as to his understanding that payment could never be applied to principal before interest. (McHugh Aff. Ex. B at 30:18–24, 44:2–6.) The August 7, 1997 letter does specify that any agreement to remit $10,000 would not supersede the underlying loan repayment contract. However, viewed under the required least sophisticated consumer standard, *see Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993), this vague language would not have been sufficient to notify Padilla that her down payment was legally required to be applied first toward interest, given her understanding of her payment options after speaking with Payco employees over the telephone.

A material issue of fact exists about whether the $10,000 downpayment was induced in violation of § 1692e(10).[16] Summary judgment on this ground is therefore denied.

### 6. *Collection Fees*

■ Section 1692f(1) provides that "the collection of any amount (including any

---

**16.** To the extent that Padilla also argues that various pieces of correspondence from Payco reflecting the division of her debt between principal, interest, and fees violated § 1692e(10), a genuine issue of material fact exists as to what the meaning of these documents and what Padilla's understanding of them was. Summary judgment on the § 1692e(10) claim is denied on this basis as well.

interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Padilla alleges that $7,955.36 in collection fees were charged on her account (*see* Pltf. Br. Ex. C Oct. 3, 1997 account statement), and that this amount violates § 1692f(1), because it translates into an unreasonable hourly rate of approximately $933. Payco argues that the collection amount was authorized by Padilla's contract with USA Group and regulations enacted under the HEA because she defaulted, and that even if it wasn't so authorized, Payco had no duty to conduct an independent investigation of the debt referred from USA Group before attempting collection.

The assessment of collection fees against defaulted federal loans are authorized by federal regulations enacted pursuant to the HEA. Specifically, 34 C.F.R. § 682.401(b) generally allows for the imposition of collection charges,[17] except for cases like Padilla's, involving the consolidation of a defaulted federal loan, which is governed by 34 C.F.R. § 401(b)(27).[18] The relevant inquiry under this provision is not whether the fee is reasonable when broken into an hourly rate, as the parties suggest, but rather whether the fee is at or below 18% of the outstanding debt—including principal and interest. 34 C.F.R. § 682.401(b)(27)(i).[19]

The account statement that reflected $7,955.34 in collection fees reflects principal plus interest due in the amount of $32,776.56. Eighteen percent of this amount, or $5,899.78, was authorized to be assessed as a collection fee pursuant to 34 C.F.R. § 682.401(b)(27)(i).

Therefore, Payco violated § 1692f by attempting to collect an excess of $2,055.56 in collection fees. Payco's argument that it merely collected these fees pursuant to USA Group's instruction is unavailing, because § 1692f(1) applies specifically to a "debt collector" that engages in the "collection of" debt, not the creditor who will be made whole as a result of the debt collector's efforts.

Padilla's motion for summary judgment is granted on this ground.

### 7. *Damages for the § 1692f Violation Shall Be Determined by the Court, not a Jury*

█ Although Padilla seeks to reserve the question of damages for the jury,

---

**17.** 34 C.F.R. § 682.410(b) provides that:
(2) Collection charges: Whether or not provided for in the borrower's promissory note and subject to any limitation on the amount of those costs in that note, the guaranty agency *shall charge* a borrower an amount equal to reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy claim. These costs may include, but are not limited to, all attorney's fees, *collection agency charges,* and court costs. Except as provided in §§ 682.401(b)(27) and 682.405(b)(1)(iv), the amount charged a borrower must equal the lesser of—
(i) The amount the same borrower would be charged for the cost of collection under the formula in § 34 CFR 30.60; or

(ii) The amount the same borrower would be charged for the cost of collection if the loan was held by the U.S. Department of Education.

**18.** Padilla's loan is a FFEL loan authorized by the Federal Family Education Loan Program under the HEA. *See* 28 U.S.C. § 1071 et seq. (FFEL is Part B of HEA).

**19.** "(27) Collection charges and late fees on defaulted FFEL loans being consolidated. (i) A guaranty agency may add collection costs in an amount not to exceed 18.5 percent of the outstanding principal and interest to a defaulted FFEL Program loan that is included in a Federal Consolidation loan."

§ 1692k provides that judges, not juries, determine damages for violations of the FDCPA. Under that section, an individual plaintiff that has proven a violation of any provision of the FDCPA may be awarded civil damages of the sum of (1) her actual damages resulting from the violation; and (2)(A) additional damages of up to $1,000 in the Court's discretion, plus (3) the costs of the action and reasonable attorneys' fees, as determined by the Court. As such, Padilla's motion to reserve damages for a jury, and for punitive damages under the FDCPA is denied. Damages shall be resolved by the Court in future proceedings.

In addition, the Court will determine reasonable attorneys' fees for Payco on its successful claims upon the filing of a motion on notice, pursuant to § 1629k(a)(a)(3).[20]

### B. *New York and Massachusetts Statutes*

■ Although Massachusetts G.L. ch. 93A allows debtors to file actions in the district courts for violations of its consumer protection provisions, *see id.* § 9(3A), a prerequisite to any such action is the filing of a written demand for relief at least thirty days prior to filing, *see id.* § 9(3). The only such demand that has been placed before the Court is a "Rule 68 F.R.C.P. Offer of Judgment" Padilla sent to Payco on August 29, 2000, some two years after filing this action. As she failed to meet the prerequisites for seeking relief under the Massachusetts statute for "Regulation of Business Practices For Consumers Protection," defendants' motion for summary judgment on Massachusetts law grounds is granted.

■ New York G.B.L. § 349 allows consumers to file civil damages actions to recover for "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state," and for violations of N.Y. G.B.L. § 601, which pertains specifically to unfair debt collection practices .[21] N.Y.G.B.L. § 349(a). As all of Padilla's claims pertain to debt collection actions taken prior to July 2000, when she moved from Massachusetts to New York, the acts she alleges took place in Massachusetts, not "in this state."

**20.** Padilla may not recover any attorneys' fees because she did not incur any, having elected instead to proceed pro se. *See generally Kay v. Ehrler,* 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991).

**21.** Section 601 provides in relevant part:
No principal creditor, as defined by this article, or his agent shall:
2. Knowingly collect, attempt to collect, or assert a right to any collection fee, attorney's fee, court cost or expense unless such changes [sic] are justly due and legally chargeable against the debtor; or
3. Disclose or threaten to disclose information affecting the debtor's reputation for credit worthiness with knowledge or reason to know that the information is false; or
4. Communicate or threaten to communicate the nature of a consumer claim to the debtor's employer prior to obtaining final judgment against the debtor. The provisions of this subdivision shall not prohibit a principal creditor from communicating with the debtor's employer to execute a wage assignment agreement if the debtor has consented to such an agreement; or
5. Disclose or threaten to disclose information concerning the existence of a debt known to be disputed by the debtor without disclosing that fact; or
6. Communicate with the debtor or any member of his family or household with such frequency or at such unusual hours or in such a manner as can reasonably be expected to abuse or harass the debtor; or
7. Threaten any action which the principal creditor in the usual course of his business does not in fact take; or
8. Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist. . . .

Payco's motion for summary judgment on the claims under the New York consumer protection statute is therefore granted.

### C. *Common Law Fraud*

Finally, Payco moves to dismiss any common law fraud claims that the amended complaint could be construed as raising, both for failure to state a claim and for failure to plead fraud with particularity pursuant to Rule 9(b). As none of Padilla's numerous submissions contest this aspect of Payco's summary judgment motion, the common law fraud claim is hereby dismissed.

### *Conclusion*

For the foregoing reasons, the motions for summary judgment are hereby granted in part and denied in part. Payco is to submit an accounting of reasonable attorneys' fees, on notice, within twenty (20) days of the date of this opinion.

It is so ordered.