LUCERO, Circuit Judge,
dissenting.
In affirming the district court, the majority holds that two provisions of the Fair Debt Collection Practices Act (“FDCPA”) are wholly superfluous. Such a reading violates central canons of statutory interpretation. Accordingly, I respectfully dissent.
I
Under the FDCPA, a debt collector generally may not communicate with a consumer’s employer. The act states:
Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.
15 U.S.C. § 1692c(b) (emphasis added).
As the foregoing provision indicates, third-party communications are prohibited by the FDCPA, except those that fit within a safe harbor provision. Section 1692b allows a debt collector to “eommunieat[e] with any person other than the consumer for the purpose of acquiring location information about the consumer.” The term “location information” is limited to “a consumer’s place of abode and his telephone number at such place, or his place of employment.” § 1692a(7). And the safe harbor provision contains numerous other restrictions. A debt collector may not state *1185 that a “consumer owes any debt” nor “indicate!] that the debt collector is in the debt collection business or that the communication relates to the collection of a debt.” § 1692b(2), (5). A debt collector must “identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer.” § 1692b(l). And a debt collector may “not communicate by post card.” § 1692b(4).
Although these restrictions may appear overly-formalistie, Congress included them for a specific reason. Citing “abundant evidence of the use of abusive, deceptive, and unfair debt collection practices,” Congress enacted the FDCPA to “insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.” § 1692(a), (e). By mandating that debt collectors hew closely to a set script, Congress barred those companies inclined to push the limit from gaining a competitive edge.
There can be no dispute that the fax at issue in this case went beyond the form Congress mandated. It included GRC’s name, logo, and address, along with GRC’s internal “ID” number for Marx’s account. It requested the employer’s address and corporate payroll address, and Marx’s employment status, date of hire, full time/part time status, and the name of her position. Such questions go well beyond a request for “location information” as defined in the FDCPA.
The majority does not consider whether GRC exceeded the permissible scope of the safe harbor provision because it concludes that the fax was not a “communication.” The FDCPA defines “communication” as “the conveying of information regarding a debt directly or indirectly to any person through any medium.” § 1692a(2). Marx’s account number at GRC plainly constitutes “information regarding a debt.” Id. Just as a bank account number is information regarding a bank account, a debt collection agency account number is information regarding a debt. And there can be no doubt that this information was “convey[ed]” to Marx’s employer when GRC faxed it. The majority asks what the account number conveys, (see Majority Op. 1182), but that is not the proper question. Instead, the issue is whether the fax conveyed information regarding a debt. It did: it conveyed the debt collection agency account number.
Although the fax at issue meets the written definition of “communication” under the FDCPA, the majority engrafts an additional element onto that definition. It holds that a “communication” must convey information regarding a debt and indicate to the recipient of the correspondence that the message relates to the collection of a debt. (See Majority Op. 1177 (“[A]bsent any evidentiary showing that Ms. Marx’s employer either knew or inferred that the facsimile involved a debt, the facsimile does not satisfy the statutory definition of a ‘communication.’ ”).)[1] But this extra re *1186 quirement is not contained in the statutory text, and its addition to the FDCPA’s definition of “communication” violates several rules of statutory construction.
First, the plain text of the FDCPA does not require that the recipient of a communication infer that the message relates to debt collection. “Where statutory language is clear and unambiguous, that language is controlling and courts should not add to that language.” Pueblo of San Ildefonso v. Ridlon, 103 F.3d 936, 939 (10th Cir.1996). Congress selected specific language in defining “communication,” and that language does not require that the recipient recognize the communication relates to debt collection. Supplementing the definition is particularly inappropriate in this instance because the FDCPA is to “be construed liberally in favor of the consumer.” Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir.2002) (citation omitted). Congress explicitly specified the manner in which debt collectors may contact third parties; it is not our role to expand on the statute.
Second, the majority’s interpretation contravenes the rule that if “Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (quotation omitted); see also Anderson v. United Tel. Co. of Kan., 933 F.2d 1500, 1502 (10th Cir.1991) (“[T]he legislature’s use of two different terms is presumed to be intentional.”). Another provision of the FDCPA contains the language the majority interlineates into the definition of “communication.” The FDCPA’s safe harbor provision bars a debt collector from “indicating] that the debt collector is in the debt collection business or that the communication relates to the collection of a debt.” § 1692b(5) (emphasis added). If Congress intended to limit communications to those messages that imply the existence of a debt, it would have used the language contained in § 1692b(5).
Third, and perhaps most importantly, the majority’s construction renders § 1692b(5) superfluous. As a rule, “we construe statutes, where possible, so as to avoid rendering superfluous any parts thereof.” Astoria Fed. Sav. & Loan Ass’n v. Solimino, 501 U.S. 104, 112, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (citation omitted). If the term “communication” refers by definition only to correspondence that implies a debt is being collected, then § 1692b(5) is entirely redundant; there would be no reason to expressly prohibit a debt collector from “indicat[ing] ... that the communication relates to the collection of a debt,” 15 U.S.C. § 1692b(5). Several well-reasoned district court opinions have rejected the majority’s interpretation on precisely this basis. See Henderson v. Eaton, 2001 WL 969105, at *2-3, 2001 U.S. Dist. LEXIS 13243, at *7 (“[Section 1692b] would make no sense if defendant’s argument were correct that a letter to a third party seeking location information must indicate a debt collection purpose in order to be subject to the Act.”); West, 998 F.Supp. at 645 (“Because a narrow interpretation of section 1692e(b) would render other portions of the statute ‘superfluous,’ the court concludes that section 1692c(b) should be broadly interpreted to prohibit a debt collector, in connection with the col *1187 lection of any debt, from conveying any information relating to a debt to a third party.see also Thomas, 579 F.Supp.2d at 1297 (noting the superfluity issue).
The majority’s holding that a “communication” must indicate to the recipient that a debt exists strays from the plain text of the statute and violates several canons of statutory construction. GRC sought more than “location information” and Marx’s account number at GRC, regardless of whether it was referred to as an “ID” number, is “information regarding a debt” that was “convey[ed]” to Marx’s employer without her permission. § 1692a(2). Accordingly, the fax fits within the plain text definition of “communication” and was prohibited under the FDCPA. See § 1692c(b). The district court’s contrary conclusion should be reversed.
II
Because I would reverse the district court, I would not reach the issue of costs. However, I disagree with the majority’s conclusion with respect to Rule 54(d) as well.
Rule 54(d) permits the prevailing party in a civil action to recover costs “[ujnless a federal statute, these rules, or a court order provides otherwise.” Fed.R.Civ.P. 54(d)(1). The FDCPA provides otherwise. It states: “On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney’s fees reasonable in relation to the work expended and costs.” § 1692k(a)(3).
This language is clear and unambiguous: A district court may award costs to a defendant “[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment.” Id. The only sensible reading of this statute is that the district court may only award costs to a defendant upon such a finding. See Youren v. Tintic Sch. Dish, 343 F.3d 1296, 1308 (10th Cir.2003) (“Under the doctrine of expressio unius est exclusio alterius, to ‘express or include one thing implies the exclusion of the other, or of the alternative.’ ” (quoting Black’s Law Dictionary (7th ed.1999))). To read it otherwise is to suggest Congress passed a statute permitting a cost award conditioned upon a finding of bad faith, but intended to permit cost awards without a finding of bad faith. In other words, the majority concludes again that a portion of the FDCPA is mere surplusage. But see Astoria Fed. Sav. & Loan Ass’n, 501 U.S. at 112, 111 S.Ct. 2166.
Both the Ninth and Second Circuits have stated that § 1692k(a)(3) permits an award of costs only upon a finding of bad faith — though the latter did so in dicta. See Rouse v. Law Offices of Rory Clark, 603 F.3d 699, 701 (9th Cir.2010) (“[A] prevailing defendant cannot be awarded costs under the FDCPA unless the plaintiff brought the action in bad faith and for the purpose of harassment.”); Emanuel v. Am. Credit Exch., 870 F.2d 805, 809 (2d Cir.1989) (“[Sjection 1692k(a)(3) permits a court to award reasonable attorney’s fees and costs only upon a finding that an action under this section was brought in bad faith and for the purpose of harassment.” (quotation omitted)). Until today, no circuit had ruled otherwise.
The FDCPA clearly permits an award of costs against a plaintiff only upon a finding that the plaintiff brought a claim in bad faith and for the purpose of harassment. The district court made no such finding here. Accordingly, its award of costs should be reversed regardless of the merits of Marx’s claim.
*1188 III
For the foregoing reasons, I respectfully dissent.

. In adding an extra condition to the statutory definition of "communication,” the majority joins a handful of district courts that appear to have done the same. See Biggs v. Credit Collections, Inc., No. CIV-07-0053, 2007 WL 4034997, 2007 U.S. Dist. LEXIS 84793 (W.D.Okla. Nov. 15, 2007) (unpublished); Horlcey v. I.V.D.B. & Assocs., Inc., 179 F.Supp.2d 861 (N.D.Ill.2002); Padilla v. Payco Gen. Am. Credits, Inc., 161 F.Supp.2d 264 (S.D.N.Y.2001); Fava v. RRI, Inc., No. 96-CV-629, 1997 WL 205336, 1997 U.S. Dist. LEXIS 5630 (N.D.N.Y. April 24, 1997) (unpublished). Those cases, however, are outliers. A majority of courts to have considered the issue have not adopted this narrowed definition. See Shand-Pistilli v. Prof l Account Servs., No. 10-CV-1808, 2010 WL 2978029, 2010 U.S. Dist. LEXIS 75056 (E.D.Pa. July 26, 2010) (unpublished); Thomas v. Consumer *1186 Adjustment Co., 579 F.Supp.2d 1290 (E.D.Mo. 2008); Ramirez v. Apex Fin. Mgmt., 567 F.Supp.2d 1035 (N.D.Ill.2008); Foti v. NCO Fin. Sys., Inc., 424 F.Supp.2d 643 (S.D.N.Y. 2006); Henderson v. Eaton, No. 01-0138, 2001 WL 969105, 2001 U.S. Dist. LEXIS 13243 (E.D.La. Aug. 23, 2001) (unpublished); West v. Nationwide Credit, Inc., 998 F.Supp. 642 (W.D.N.C.1998).