Leonardo A. SIERRA, Plaintiff

v.

**FOSTER & GARBUS, Ronald Foster, and Mark A. Garbus, Defendants.**

No. 98 CV 8132 (RO).

United States District Court, S.D. New York.

May 11, 1999.

Sotomayor & McStay, New York, by James Sotomayor, for Plaintiff.

Steinberg & Cavaliere, New York, by Neil Silberblatt, for Defendants.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Plaintiff Leonardo Sierra asserted claims against defendants Foster & Garbus (F & G)[1] under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), New York General Business Law § 349, and common law fraud. He alleged that F & G had charged him $507.92 in "unfair, deceptive and illegal" attorneys' fees (Complaint ¶¶ 9, 13). Defendants moved to dismiss the FDCPA claim pursuant to F.R.C.P. 12(b)(6), and sought costs and attorneys' fees. On considering the papers and hearing oral argument on March 12, 1999, I dismissed the claims from the bench and awarded attorneys' fees to the defendants. Pursuant to the Court's direction, defendants submitted affidavits for attorneys' fees and costs in the amount of $4,586.60. True to form, plaintiff objected to the amount of attorneys fees, so I held another hearing.

The gravamen of the complaint was that in May of 1997, First Deposit National Bank asked F & G to collect Sierra's consumer credit card debt of about $3,500. F & G sent several demand letters to Sierra, warning him of possible legal action if he did not satisfy his alleged indebtedness, including a letter dated April 26, 1997 demanding $507.92 in attorneys' fees. Sierra entered into a settlement agreement[2] with First Deposit on June 5, 1997 to repay $3,522.34 (including the attorneys' fees) in monthly installments of $100. In the event Sierra defaulted, the Agreement provided that First Deposit would proceed by way of Summons & Complaint for the full amount due, less any payments made,

together with attorneys' fees, interests, costs and disbursements, as provided in Sierra's credit agreement with the Bank (Forster Aff. Ex. B). Sierra made several monthly payments according to the Agreement, but when he ceased making payments in December of 1997, First Deposit served a Summons & Complaint on Sierra on January 21, 1998. This complaint, filed in state court in Bronx County, included a claim for attorneys' fees in the amount of $507.92, as demanded in the April 1997 letter and as agreed in the June 1997 settlement. On or about the same day, the parties entered into a settlement stipulation, pursuant to which Sierra again acknowledged that there was a balance due and owing in the amount of $3,400.49, and agreed to pay the full amount in monthly installments of $100. (Forster Aff. Ex. C). This settlement stipulation provided that First Deposit had the right to enter judgment against Sierra for the full amount demanded in the complaint together with attorneys' fees if Sierra failed to make any monthly payment. (Forster Aff. Ex. C). Despite the additional costs of serving a Summons and Complaint, F & G's demanded for attorneys' fees remained $507.92 as per the agreement and did not increase.

In June of 1998, Sierra commenced an action against F & G in Supreme Court, Bronx County, alleging three causes of action which are nearly identical to the instant case: 1) alleged violation of the FDCPA; 2) alleged violation of N.Y. General Business Law § 349; and 3) common law fraud. Although he did not dispute his credit card debt, Sierra contended that the $507.92 claimed in attorneys' fees—which he had consented to in the June 1997 settlement—was unfair, deceptive and illegal. On July 8, 1998, defendants removed the case to federal court because of the FDCPA claims. Plaintiff then withdrew

---

1. The actual name of the firm appears to Forster & Garbus, but they are sued herein as "Foster and Garbus."

2. This Agreement is in the form of a letter agreement countersigned by both parties, dated June 5, 1997 (Forster Aff. Ex. B).

his FDCPA claim and moved to remand back to state court. Relying upon plaintiff's counsel's representation that all of the FDCPA claims had been dropped, Judge Carter of this Court granted the motion and remanded the case (98 CIV 4834) to Bronx Supreme Court. On October 29, 1998, Sierra discontinued his action in state court without prejudice and without costs to any party. On December 8, 1998, however, Sierra filed this action in federal court.

At the March 12, 1999 oral argument, defendants argued that Sierra's FDCPA claim was time-barred under 15 U.S.C. § 1692k(d), which provides that an "action to enforce any liability created by this subchapter may be brought in any appropriate United States district court ... within **one year from the date on which the violation occurs.**" (emphasis added). Here, F & G sent letters to Sierra on April 26, 1997, May 8, 1997, June 5, 1997 and July 30, 1997. The settlement agreement, under which Sierra acknowledged his debt and agreed to discharge it in its entirety, is dated June 1997. This suit was filed on November 13, 1998.

■ Plaintiff endeavored to avoid the time bar by contending that his claim was part of a "continuing violation" under 15 U.S.C. § 1692k(d), and that his December 8, 1998 filing was timely because First Deposit served a summons and complaint upon him on January 21, 1998. If plaintiff's theory were correct, however, his cause of action could be kept alive indefinitely because each new communication would start a fresh statute of limitations. However, plaintiff cited no case law supporting his interpretation of the statute,[3] and at least one other court has rejected

this theory. *See Calka v. Kucker, Kraus & Bruh, LLP,* NO. 98 CIV 0990, 1998 WL 437151 at *3 (S.D.N.Y. Aug.3, 1998). I agree. This is not a case where defendants have sent a series of threatening letters, each of which violate the FDCPA and only some of which are time-barred. Here, Sierra's assertion of a violation is the "unfair and illegal" attorneys' fees authorized by the June 5, 1997 agreement, which Sierra breached when he ceased making payments. This suit, filed on November 13, 1998 is therefore time-barred, and plaintiff's state law claims are dismissed for lack of pendent subject matter jurisdiction.

■ Even if the suit were not time-barred, this case should be dismissed on the merits because nothing in the June 1997 Agreement or the January 1998 settlement amounts to a violation of the FDCPA. Sierra's Visa Account Agreement provides that the cardholder promises to pay all amounts borrowed when due, as well as "collection costs we incur including, but not limited to, reasonable attorney's fees and court costs." (Forster Aff. Ex. A). Thus, these fees were "expressly authorized by the agreement creating the debt," in accordance with 15 U.S.C. § 1692f(1) and do not violate the FDCPA.

Even evaluated under the "least sophisticated consumer standard," as required by the FDCPA, *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60 (2d Cir.1993), F & G's practices do not constitute a violation of the FDCPA. Plaintiff's basic contention is that F & G's collection efforts were:

> computer generated, mass produced forms which involved little, if any work by an attorney. Therefore, plaintiff be-

---

**3.** Most of the cases which have considered this section of the statute have focused on whether the violation occurs on the date the letter is mailed or the date it is received. *See, e.g., Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 868 (2d Cir.1992) (observing that harm does not occur until receipt of the collection notice); *Berrios v. Sprint Corp.,* No. 97 CIV 0081, 1997 WL 777945 at *4 (E.D.N.Y. Nov.

13, 1997) (finding that the statute of limitation on plaintiff's FDCPA claim "is one year from the date she received the letter"). *See also, Naas v. Stolman,* 130 F.3d 892, 893 (9th Cir.1997) (holding that where the violation of the FDCPA was the filing of a lawsuit, the statute of limitations begins to run on the date of filing).

lieves that the $507.92 claimed by an defendants in attorneys' fees is an unreasonable amount which violated the FDCPA. Plaintiff also believe that the additional charge of $352.98 [in interest/costs/disbursements], which amounts to 13.8999% of the alleged debt, is unreasonable.

Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss at 5. Sierra also claims that F & G's letters to him were either unsigned or signed by non-attorneys in violation of the FDCPA. Moreover, plaintiff claims that the amount requested in attorneys' fees is unfair and illegal because it is 20% of the alleged debt, rather than based upon an hourly fee, and is therefore a *per se* violation of the FDCPA.

Sierra's unsupported and conclusory allegations must be dismissed. Plaintiff does not cite any instance when F & G made any "false, deceptive, or misleading representations" regarding the collection of Sierra's debt.[4] All of defendants' collection letters to Sierra contained the clearly-worded disclaimer that F & G is a "debt collector and any information we obtain will be used in attempting to collect this debt," and the legal warning required by law, so they were not "false and misleading." Most importantly, plaintiff does not truly dispute that F & G is entitled to attorneys' fees; he merely claims that the amount is unreasonable and therefore a violation of the law. At oral argument, plaintiff's counsel's admitted that *he* charges between $100 and $200 per hour. At this rate, defendants' three hours of work is not "unreasonable" as a matter of law for a debt collection. Therefore, plaintiff's claims are dismissed.

■ Defendants now move for *their* costs and reasonable attorneys' fees. Ordinarily, litigants are responsible for their own legal fees, and unless fees are specifically authorized by statute or by contract, a party generally cannot recover its attorneys' fees. *See Cruz v. Local 3*, 34 F.3d 1148, 1158 (2d Cir.1994). In this case, attorneys' fees are authorized by 15 U.S.C. § 1692k(a)(3), which provides that "[o]n a finding by the court that an action[5] under this section was brought in bad faith or for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."[6]

Predictably, plaintiff contends that attorneys' fees are not appropriate.[7] However, there is ample evidence before me of "bad faith" or "harassment." Plaintiff voluntarily abandoned his FDCPA claims once in order to have the case remanded back to state court, then he voluntarily discontinued its prosecution in state court, only to bring it once again in federal court. Those actions certainly smack of "bad faith". Plaintiff has now compelled at least two District Judges to deal with a claim that some portion of a $507.92 attorneys' fees assessment is unfair. Defendants should be entitled to any reasonable fees incurred in defending themselves in this latest case.

■ To determine reasonable attorneys' fees, "the court must calculate a lodestar

---

4. Defendants served written interrogatories upon plaintiff in the state court suit, but plaintiff refused to identify any specifics in its reply, claiming that any such instances are for the trier of fact to find.

5. [Footnote by the Court] Or here, "actions."

6. The case law suggests that it is not necessary to bring a separate motion on attorneys' fees once a court has made a finding of bad faith. *See Ayres v. National Credit Management Corp.*, No. 90 CIV 5535, 1991 WL 66845 at *4 (E.D.Pa. April 25, 1991) (citing *Emanuel*

*v. American Credit Exchange*, 870 F.2d 805 (2d Cir.1989)).

7. Plaintiff does not actually contest the award of attorneys' fees because he claims that "the issue has been decided by the Court and can only be disputed through an appeal." (Letter from James Sotomayor to the Court dated 3/31/99). Accordingly, plaintiff filed an untimely appeal despite the fact that he had requested a hearing regarding the amount of attorneys' fees.

figure based upon the hours reasonably spent by counsel … multiplied by the reasonable hourly rate." *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 98 (2d Cir.1997). Here, defendants' counsel has submitted affidavits detailing 32.3 hours of work at $142 per hour. The 34.2 hours includes 2.4 hours of travel time and 1.9 hours spent preparing the affidavit of attorneys' fees and attending the hearing regarding attorneys' fees. I find that this time was reasonably spent and should be compensated. *See Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1183 (2d Cir. 1996) (holding that "attorneys' fees for the preparation of the fee application are compensable"); *Cruz*, 34 F.3d at 1161 (finding that "the touchstone in determining whether hours have been properly claimed is reasonableness" and that it was error for the district court to refuse to compensate an attorney's travel time). I also find that a rate of $142 per hour is a reasonable rate. *See Cruz*, 34 F.3d at 1159 (finding that $175 per hour or $150 per hour are reasonable fees).

Accordingly, plaintiff's claims are dismissed and defendants are awarded their costs and a reasonable attorneys' fee in the amount of $4,586.60 incurred in responding to plaintiff's claim. Since I find it was unreasonable for counsel asserting its client's claimed defense to a $507.92 legal fee to have undertaken the frenetic procedural gyrations with the off-again, on-again stances[8] long after any reasonable attorney should have realized the defense had no merit, I conclude that said attorneys' fees are recoverable against Sierra and/or Sotomayor & McStay, jointly and severally.

The foregoing is so ordered.

---

8. An original settlement by Sierra was dishonored; a suit by the Bank to collect was settled, with settlement again dishonored; then two suits by Sierra; the first voluntarily discontinued after a remand Sierra had sought and obtained; and the second one now before me. In addition, plaintiff has filed an unripe appeal to the Second Circuit which is now on hold.