Ruby JOSEPH, Plaintiff,

v.

J.J. MAC INTYRE COMPANIES, L.L.C., Defendant.

No. C–02–2771 EMC.

United States District Court, N.D. California.

Sept. 12, 2003.

Bryan Kemnitzer, Christopher Jennings, Kemnitzer Anderson Barron & Ogilvie, LLP, San Francisco, CA, for Plaintiff.

Clark Garen, Law Offices of Clark Garen, Corona, CA, for Defendant.

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 46)

CHEN, United States Magistrate Judge.

A hearing was conducted on Defendant's motion for summary judgment on September 3, 2003. Christopher Jennings of Kemnitzer, Anderson, Barron & Ogilvie appeared on behalf of Plaintiff, and Clark Garen appeared on behalf of Defendant. Based on the Court's review of the record in this case, as well as the moving papers, accompanying declarations and oral argument heard before the Court, the Court **DENIES** the motion.

## I. *FACTUAL BACKGROUND AND PROCEDURAL POSTURE*

Plaintiff, a San Francisco resident, brought suit alleging five causes of action against the Defendant, a debt collection agency located in Riverside County, California, in connection with Defendant's efforts to collect on debts owed by Plaintiff for patient care at San Francisco General Hospital. Plaintiff alleges: (1) violation of the Rosenthal Fair Debt Collection Practices Act (California Civil Code § 1788 *et seq.*); (2) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692; (3) an invasion of privacy; (4) tort-in-se; and (5) violation of Cal. Business and Professions Code § 17200 *et seq.* First Amended Complaint (hereinafter "FAC"). Plaintiff Ruby Joseph (hereinafter referred to as "Joseph" or "Plaintiff") sought injunctive relief, restitution and damages. *Id.*

Sometime prior to March 1999, Plaintiff, physically disabled, sought and received medical services from San Francisco General Hospital, owned and operated by the City and County of San Francisco. Joseph incurred debt at San Francisco General Hospital in the amount of $2,356.62. Joseph's debt was assigned to a debt collection agency, CODAR, Inc., d/b/a J.J. Mac Intyre Company.

In March 1999, Defendant began sending collection letters to Joseph in an attempt to collect interest and the principal debt owed by her. In addition to collection letters, Defendant also used an automated dialing system with a pre-recorded voice to call Joseph. Joseph alleges that through this system, Defendant called Joseph at odd hours and as often as three times a day over a year and a half period, even though Joseph had begun making $50 monthly payments towards her debt. FAC ¶¶ 8–17.

The suit was filed in San Francisco Superior Court on May 2, 2002. On June 10, 2002, Defendant removed this matter to federal court pursuant to 28 U.S.C. §§ 1357 and 1367. Both parties consented to proceed before the Court pursuant to 28 U.S.C. § 636(c)(1).

In December, 2002, this Court granted Defendant's (1) motion to dismiss Plaintiff's claims that Defendant violated § 1788.13(e) of the Rosenthal Act and § 1692f(1) of the FDCPA by impermissibly collecting interest; and (2) motion for summary judgment regarding claims under 15 U.S.C. § 1692c(a)(1) based upon off-hour phone calls. The Court also denied Defendant's (1) motion to dismiss Plaintiff's claims under § 1788.11(b) and § 1692d(6) for lack of meaningful disclosure of identity; (2) motion for summary judgment regarding Plaintiff's claims under Civil Code

§ 1788.11(d), § 1788.11(e) and 15 U.S.C. § 1692d(5) for repeated phone calls with intent to harass or annoy; (3) motion for summary judgment regarding Plaintiff's invasion of privacy claims for intrusion upon seclusion; (4) motion for summary judgment on Plaintiff's claim for tort-in-se; and (5) motion for summary judgment on Plaintiff's claim under Cal. Business and Professions Code § 17200 *et seq. Joseph v. J.J. MacIntyre Cos.,* 238 F.Supp.2d 1158 (N.D.Cal.2002).

Defendant now moves for summary judgment on all remaining claims, including (1) § 1788.11(b) and § 1692d(6) for lack of meaningful disclosure of the caller's identity; (2) §§ 1788.11(d)-(e) and § 1692d(5) for repeated phone calls with intent to harass or annoy; (3) intrusion upon seclusion; (4) tort-in-se; and (5) Cal. Business and Professions Code § 17200 *et seq.* MSJ, at *passim.* Defendant argues that its automated messages should not be required to disclose that the phone calls are from a debt collection agency in light of the overall statutory scheme of the FDCPA and the Rosenthal Act. *Id.* at 4–10. Defendant also contends that there is no genuine issue of fact regarding repeated harassing calls because virtually all the calls to Plaintiff's residence were either outside the one-year statute of limitations or were directed at other residents in Plaintiff's home. *Id.* at 3, 10–13. Finally, Defendant argues that since there are no genuine issues of material fact regarding Plaintiff's FDCPA and Rosenthal Act claims, Plaintiff therefore will not be able to present evidence supporting her claims of invasion of privacy, tort-in-se, and unfair business practices. *Id.* at 13–15.

Summary judgment shall be granted upon showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Coca–Cola Co. v. Overland, Inc.,* 692 F.2d 1250, 1253 (9th Cir.1982). The moving party possesses the initial burden of showing the absence of a genuine issue of fact. *See Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F.2d 665, 668 (9th Cir.1980). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Aydin Corp. v. Loral. Corp.,* 718 F.2d 897, 902 (9th Cir.1983) (stating that a genuine issue is found where "a judge or jury [must] resolve the parties' differing versions of the truth at trial"). Justifiable inferences are to be drawn in the non-moving party's favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## II. ANALYSIS

### A. Statute of Limitations

The Court recognizes that district courts are not of a single view as to how the one-year statute of limitations for the FDCPA applies to a course of conduct, some of which occurred within the limitations period and some of which preceded it.[1] In *Padilla v. Payco General American Credits, Inc.,* 161 F.Supp.2d 264 (S.D.N.Y. 2001), in which the plaintiff alleged that a debt collection company violated the FDCPA in attempting to collect her college and law school loans, the court denied, in relevant part, defendant's motion for summary argument and rejected an argument by the debt collector that is similar to the one made by Defendant in this case:

> Without citing any legal authority, Payco contends that this statute of limitations prohibits Padilla from raising any

---

1. The Court is not aware of any published rulings interpreting the Rosenthal Act's one-year statute of limitations. *See* West's Annotated Cal. Civil Code § 1788 *et seq.* (updated 2003).

factual allegations that took place more than one year before July of 1998, when she first filed suit in Massachusetts. However, the statute of limitations is not intended to deprive plaintiffs of the use of evidence of violations that took place more than a year before filing, but rather to protect defendants by ensuring that the action is filed within one year of the most recent date on which the defendant is alleged to have violated the FDCPA.

*Id.* at 273 (citation omitted).

In *Pittman v. J.J. MacIntyre Co.*, 969 F.Supp. 609 (D.Nev.1997), which involved a plaintiff who defaulted on a consumer loan and a motion to dismiss brought by the Nevada affiliate of the same Defendant as in this case, the court ruled that any claims based on communications prior to the one-year period were time barred. *Id.* at 611. However, in *Pittman* all but three of the communications occurred outside of the statute of limitations, and the plaintiff conceded that her cause of action for inconvenient calls to work was based solely on the three calls within the statutory period. *Id.* at 611.

In *Sierra v. Foster & Garbus*, 48 F.Supp.2d 393 (S.D.N.Y.1999), the court held that a consumer's FDCPA action was time barred and it rejected plaintiff's "continuing violation" argument. However, the holding in *Sierra*, which involved the collection of allegedly illegal attorney fees associated with debt collection, is distinct; the alleged fraud in procuring a settlement agreement was a discrete act. *See id.* at 395. In rejecting the continuing violation theory, the court noted, "This is not a case where defendants have sent a series of threatening letters, each of which violate the FDCPA and only some of which are time-barred." *Id.*

It therefore appears to be an open question as to whether the continuing violation doctrine might apply under the FDCPA and Rosenthal Act where there is an alleged pattern of repeated harassing phone calls. Although the analogy is not perfect, the Court finds the facts of this case, when construed in the light most favorable to the Plaintiff, can be analogized to the continuing violation doctrine in hostile work environment cases, and that the doctrine may be applied under the FDCPA and Rosenthal Act.

In hostile work environment claims, unlike claims involving discrete acts of discrimination, the Supreme Court has held, "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In *Morgan*, the Court explained that the purpose the continuing violation doctrine in hostile work environment cases stems from the fact that such claims "are different in kind from discrete acts. Their very nature involves repeated conduct.... The 'unlawful employment practice' therefore cannot be said to occur on any particular day." *Id.* at 115, 122 S.Ct. 2061 (citations omitted). The Court ruled that in such cases it is of paramount importance to look to "all the circumstances;" the fact that some of the alleged acts fall outside the statutory period is therefore no bar under Title VII. *Id.* at 116–17, 122 S.Ct. 2061. *See also Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108–09 (9th Cir.1998) (district court erred in granting summary judgment to defendant in hostile work environment sexual harassment claim where there was genuine issue of fact as to whether the violation continued into the relevant period of limitations). California courts have applied the continuing violation doctrine under California anti-discrimination law as well. *See Birschtein v. New United Motor Mfg.*

*Inc.*, 92 Cal.App.4th 994, 1001–08, 112 Cal. Rptr.2d 347 (2001) (in FEHA hostile environment sexual harassment case, trial court erred in granting summary judgment to defendant when there was a genuine issue of fact regarding tolling under the continuing violation doctrine); *Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798, 821–25, 111 Cal.Rptr.2d 87, 29 P.3d 175 (2001) (in California FEHA disability claim, the continuing violation doctrine applies in light of the purpose of FEHA and the fact that failure to accommodate over time is an ongoing process rather than a single action).

■ Certain kinds of acts prohibited by the FDCPA and the Rosenthal Act, *e.g.*, a phone call at midnight, or a threatening call to a consumer's employer, are discrete acts. Here, however, Plaintiff alleges that Defendant persisted in a pattern of repeated calls including automated phone calls. FAC, ¶¶ 12–14. As stated above, the Supreme Court recognized in *Morgan* that, in contrast to discrete acts of discrimination, such as a retaliatory adverse employment action (536 U.S. at 110, 122 S.Ct. 2061), claims alleging a hostile work environment are not discrete acts because, "Their very nature involves repeated con-

duct." *Id.* at 115, 122 S.Ct. 2061. A key commonality shared by the FDCPA, the Rosenthal Act, and Title VII's prohibition of a hostile work environment is the focus on a pattern of conduct. As in the case of employment, claims of a pattern of debtor harassment consisting of a series of calls "cannot be said to occur on any particular day." *Morgan,* 536 U.S. at 115, 122 S.Ct. 2061.[2] Under the appropriate circumstances therefore, the continuing violation doctrine may apply to debt collection claims.

■ The key is whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts. If there is a pattern, then the suit is timely if "the action is filed within one year of the most recent date on which the defendant is alleged to have violated the FDCPA" (*Padilla,* 161 F.Supp.2d at 273), and the entire course of conduct is at issue.

Here, the evidence must be viewed in the light most favorable to the Plaintiff for purposes of summary judgment analysis. The evidence shows a pattern of calls made to Plaintiff, with, as Defendant previously acknowledged, over 200 calls to Plaintiff's residence during a nineteen-

---

**2.** Defendant argues that the Title VII doctrine is inapposite because in the employment context the victim is typically in a subordinate position in relation to the employer-defendant. However, in hostile work environment cases, in contrast to *quid pro quo* sexual harassment cases, the environment could be the result of actions by co-workers. *See e.g., Birschtein,* 92 Cal.App.4th at 997–98, 112 Cal. Rptr.2d 347 (court applied continuing violation doctrine when a non-supervisory coworker repeatedly subjected a female assembly line worker to vulgar sexual advances and, after he was reprimanded, continued a "campaign of staring at her").

More importantly, Plaintiff correctly observes that as oppressive as a hostile environment in the workplace may be, the harassment barred by the FDCPA and the Rosenthal

Act is of heightened concern because it intrudes upon the privacy of the debtor in his or her own home. *See Carey v. Brown,* 447 U.S. 455, 471, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) ("Preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value. Our decisions reflect no lack of solicitude for the right of an individual 'to be let alone' in the privacy of the home, 'sometimes the last citadel of the tired, the weary, and the sick.' ") (citation omitted); *Frisby v. Schultz,* 487 U.S. 474, 484, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) ("The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society.") (quoting *Carey,* 447 U.S. at 471, 100 S.Ct. 2286).

month period. *Joseph,* 238 F.Supp.2d at 1168. Several calls were made after Plaintiff clearly instructed the Defendant not to call her anymore. *Id.* As discussed later in Part II C, *infra,* approximately 75 of these calls were within the limitations period. At the hearing, Defendant conceded there had been no substantial period of cessation during that time. Even assuming *arguendo,* as discussed below, that calls directed to other members of Ms. Joseph's household are excluded, there were still a sufficient number of calls over a two-and-one-half year period to constitute a pattern of related conduct, triggering the continuing violation doctrine.

Application of the continuing violation doctrine to these facts is not only logical by way of analogy, it is entirely consistent with the FDCPA's and the Rosenthal Act's broad remedial purpose of protecting consumers. *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir.1982) ("The [FDCPA] is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists."); Cal. Civil Code § 1788.1(b) ("It is the purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts ...").

█ Finally, even if the statute of limitations were to bar liability for conduct outside the limitations period, evidence of pre-limitations period calls would likely be admissible to show background, to establish a foundation for other evidence, as well as to show Plaintiff's vulnerable state of mind and establish the extent of general damages. *See Padilla,* 161 F.Supp.2d at 273 ("[T]he statute of limitations is not intended to deprive plaintiffs of the use of evidence of violations that took place more than a year before filing."); *Warren v. Halstead Indus. Inc.* 802 F.2d 746, 753 (4th Cir.1986) ("Even where such past dis-

criminatory acts are time-barred for purpose of a particular claim, the Supreme Court has stated that this type of showing 'may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue.'") (citing *United Air Lines v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)); *Derrickson v. Circuit City Stores, Inc.,* 84 F.Supp.2d 679, 685 n. 1 (D.Md.2000) (same).

Defendant's motion for summary judgment based on the statute of limitations is therefore denied.

**B. Lack of Meaningful Disclosure of Debt Collector's Identity**

Section 1692d(6) of Title 15 defines the following as prohibited under the FDCPA: "Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity." § 1692d(6). Cal. Civil Code § 1788.11(b) of the Rosenthal Act likewise prohibits "Placing telephone calls without disclosure of the caller's identity, provided that an employee of a licensed collection agency may identify himself by using his registered alias name as long as he correctly identifies the agency he represents." § 1788.11(b). Defendant argues that these provisions do not apply to automated phone calls. Defendant argues that the disclosure requirements apply only when a live person from the debt collection firm makes the call directly to the debtor.

In particular, Defendant argues that this Court's statutory interpretation of Cal. Civil Code § 1788.11(b) and 15 U.S.C. § 1692d(6) must be harmonized with 15 U.S.C. §§ 1692b(1), 1692c(b), 1692f(7), and 1692f(8), which do not require the same disclosures in other contexts. Sections 1692b(1) and 1692c(b) pertain to third party communications, §§ 1692f(7)-(8) pertain to written correspondence. Section

1692b(1) requires that any debt collector communicating with a third party to obtain information shall "identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer." § 1692b(1). Similarly, § 1692c(b) requires, with a few narrow exceptions, that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." § 1692c(b). Sections 1692f(7)-(8) prohibit certain kinds of written correspondence to the debtor:

> (7) Communicating with a consumer regarding a debt by post card. (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

§§ 1692f(7)-(8). Defendant argues that these sections, which are intended to protect the privacy interests of debtors by prohibiting (rather than mandating) disclosures which might be revealed to third parties, are applicable to automated calls because someone other than the debtor might pick up the phone, allowing the au-

tomated call to reveal the debtor's financial situation. MSJ, at 4–7.

██ The Court finds that § 1788.11(b) and § 1692d(6), which prohibit the making of telephone calls without meaningful disclosure of the caller's identity, apply equally to automated message calls and live calls. The Court must first look to the plain meaning of these provisions. *Garcia v. U.S.*, 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984); *Lennane v. Franchise Tax Bd.*, 9 Cal.4th 263, 268, 36 Cal.Rptr.2d 563, 885 P.2d 976 (1994). Both provisions of the FDCPA and the Rosenthal Act prohibit the *placement* of telephone calls without meaningful disclosure.[3] The plain language of these two statutes applies to telephone calls; no distinction is made between live phone calls and automated phone calls.

Defendant's reliance on §§ 1692f(7)-(8), which pertain to disclosures by debt collectors when communicating by mail (where the outside of the postcard or envelope is available for the world to see), and on §§ 1692b(1) and 1692c(b), covering communications with third parties about the debtor, are both misplaced. Regarding §§ 1692f(7)-(8), there is a substantial difference in the risk of breaching the privacy interests of the debtor; disclosure on the face of an envelope or postcard reveals to anyone who sees it the fact that the recipient is subject to collection activity. While the Court acknowledges that disclosure during an automated call could compro-

---

**3.** Defendant's automated message system does not disclose that the call is from a debt collector or on behalf of the creditor SF General Hospital, as is required by § 1788.11(b) and § 1692d(6):

> Hi. This is Julie Green and I have an important message for you. To reference your message, please call 1–800–777–9929. Again, my name is Julie Green. Please call me to retrieve your message at 1–800–777–9929.

Kightlinger Deposition, at 63, 68 (quoting David Schulz Decl.); *see also Joseph*, 238 F.Supp.2d at 1167 (citing *Wright v. Credit Bureau of Georgia, Inc.* 548 F.Supp. 591, 597 on reconsideration 555 F.Supp. 1005 (N.D.Ga.1982) ("[T]he 'meaningful disclosure' required by section 1692d(6) has been made if an individual debt collector who is employed by a debt collection company accurately discloses the name of her employer and the nature of her business and conceals no more than her real name.")).

mise the debtor's privacy if another party such a neighbor or relative inside the home picks up the debtor's phone and hears the automated call (MSJ, at 7; Reply 6), the possible compromise of privacy is less likely and more remote than where *e.g.,* the debtor indicates the nature of the collection notice on the outside of an envelope sent by mail for the world to see.

As for third party communications, the legislatures' concern in enacting these provisions about privacy violations resulting from deliberate disclosure of the debtor's status to third parties such as the debtor's employer has far less applicability to phone calls made to the debtor's phone number at his or her residence for similar reasons.

In view of the plain language of the statutes, and the readily distinguishable context of mail and disclosure to third parties, there is no compelling basis for overriding the clear and unequivocal language of the statutes at issue. *See Johnson v. NCB Collection Services,* 799 F.Supp. 1298, 1303 (D.Conn.1992) ("The potential for abuse or harassment by debt collectors is far greater in telephone calls than in written communication."); *Pearce v. Rapid Check Collection, Inc.,* 738 F.Supp. 334, 337 (D.S.D.1990) (quoting the House Report, which indicates that the FDCPA's protection against third party contacts was intended to guard against adverse employment actions as well as invasion of privacy).

In summary, this is not one of the "rare and exceptional circumstances" (*Garcia,* 469 U.S. at 70, 105 S.Ct. 479) where the

plain language of the statutes are in obvious conflict with the clear intent of either Congress or the California Legislature. The Court therefore concludes that automated telephone calls are governed by § 1788.11(b) and § 1692d(6). Whether Defendant violated these provisions will be determined at trial.[4] Defendant's motion for summary judgment is therefore denied.

## C. Repeated Phone Calls with Intent to Harass or Annoy

█ Regarding Defendant's motion for summary judgment regarding § 1788.11(d), § 1788.11(e), and 15 U.S.C. § 1692d(5), the Court finds that genuine issues of material fact remain for trial. At the hearing both parties appeared to agree that there were roughly 75 calls made to Ms. Joseph's residence within the statutory period. Defendant argues that nearly all of these calls to Ms. Joseph's residence were actually not intended for her, but were directed at the three other inhabitants in her home who also had debts that Defendant was attempting to collect.[5] MSJ, at 2, 11; Exhs. 9–11. There were dozens of calls within the limitations period made by Defendant's automated calling system which neither state the party to whom the call is directed nor disclose the caller's identity.

While Defendant asserts the automated calls were intended for other residents in Ms. Joseph's home, there is a genuine issue as to a material fact as to whether these calls may be deemed to comprise part of the pattern of harassing calls allegedly received by Plaintiff, and thus action-

---

4. Defendant has not argued, and the Court does not address whether Defendant may claim in defense substantial compliance with the statutes or lack of demonstrable harm resulting from any violation of these particular statutes, since Plaintiff was arguably aware of the source and purpose of these calls.

5. The names of the other debtors are not specified in this order because they are not parties in this case, and because they too have privacy interests under the FDCPA and the Rosenthal Act.

able under the claims alleged herein. First, the plain language of the FDCPA prohibits "Causing a telephone to ring or engaging **any person** in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass **any person at the called number.**" § 1692d(5) (emphasis added). Similarly, the Rosenthal Act prohibits "Causing a telephone to ring repeatedly or continuously to **annoy the person called.**" § 1788.11(d) (emphasis added). Moreover, regardless of whether Plaintiff was the intended target, receipt of automated or other calls that could have reasonably been perceived by Plaintiff as directed at her (since many of the calls were not expressly directed at others) could have intensified her stress and privacy invasion, which the statutes seek to prevent.

Furthermore, in view of the Court's ruling on the limitations period, all the calls made between 1999 and 2002 are relevant. Construing the evidence in Plaintiff's favor on this motion for summary judgment, the approximately two dozen calls admittedly made to Plaintiff during the relevant period, together with the other possible calls not clearly accounted for [6] and the automated calls made to Plaintiff's residence, would provide an adequate basis for the finder of fact to find a violation of state and federal law. This is especially so since FDCPA and Rosenthal Act claims must be evaluated under a least sophisticated consumer standard. *Baker v. G.C. Services Corp.,* 677 F.2d 775, 778 (9th Cir.1982);

*Swanson v. Southern Oregon Credit Service, Inc.,* 869 F.2d 1222, 1227 (9th Cir. 1988); *Joseph,* 238 F.Supp.2d at 1168 (applying the least sophisticated standard to the Rosenthal Act as well as the FDCPA). This issue cannot be decided as a matter of law, and thus Defendant's motion for summary judgment is denied.

### D. Invasion of Privacy, Tort In Se, and Unfair Business Practices

As stated above, genuine issues of material fact remain regarding Plaintiff's FDCPA and Rosenthal Act claims. Therefore, for the reasons stated in the Court's earlier ruling and above, Defendant is not entitled to summary judgment regarding Plaintiff's additional claims for invasion of privacy, tort-in-se, and Cal. Business and Professions Code § 17200 *et seq. Joseph,* 238 F.Supp.2d at 1169–71.

### III. *CONCLUSION*

For the reasons stated above, the Court **DENIES** Defendant's motion for summary judgment in its entirety, including FDCPA, Rosenthal Act, invasion of privacy, tort-in-se, and unfair business practices claims. There are genuine issues of material fact that must be decided by a jury.

IT IS SO ORDERED.

---

6. There were 24 calls within the statutory period which Defendant claims were made to others, but which the Plaintiff contends are not accounted for as calls to the other residents. Opposition, at 8 n. 1. The Court compared the records provided with those provided previously. The Court found a number of discrepancies in the records, including gaps of a two to five minutes as to when the calls were made (9/13/01, 9/17/01, 9/18/01, 10/1/01, 10/15/01, 10/16/01, 10/17/01, 11/1/01, 11/21/01), instances where one set of records indicates a call being made but the other set does not (9/19/01, 10/11/01, 11/12/01, 11/21/01), and an instance where the calls were at completely different times of day (12/14/01). Drawing all inferences in Plaintiff's favor for purposes of summary judgment, the Court finds there is a genuine issue of fact as to whether any or all of the 24 calls were in fact made to Plaintiff. There is also a question whether the phone records submitted by Defendant are reliable.