Christopher SCHUH, et ano., Plaintiffs,

v.

DRUCKMAN & SINEL, LLP, et al., Defendants.

No. 07 Civ. 366 (LAK)(GWG).

United States District Court, S.D. New York.

Feb. 2, 2009.

John C. Klotz, New York, NY, for Plaintiffs.

Blaise U–Shing Chow, Eric Corey Weissman, Geoffrey William Heineman, Ropers, Majeski, Kohn & Bentley, Preston Lee Zarlock, Phillips Lytle LLP, New York, NY, Martorana C. Charles, Hiscock & Barclay, Buffalo, NY, Frank E. Morreale, Holland & Knight LLP, Jacksonville, FL, for Defendants.

## ORDER

LEWIS A. KAPLAN, District Judge.

No objections to the report and recommendation of Magistrate Judge Gorenstein having been filed, the motion to dismiss of the HSBC defendants [docket item 76] is granted. The motion to dismiss of Druckman & Sinel and Maria Olivari [docket

item 80] is granted to the extent that the action is dismissed against defendant Olivari and otherwise denied.

SO ORDERED.

## REPORT AND RECOMMENDATION

GABRIEL W. GORENSTEIN, United States Magistrate Judge.

Christopher and Diane Schuh bring this suit alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The remaining defendants in this case are HSBC Bank USA, N.A.; HSBC Mortgage Services, Inc. ("HSBC MS"); HSBC Finance Corporation (collectively, the "HSBC defendants"); Druckman & Sinel, LLP ("Druckman"), and Maria Olivari. The defendants have moved to dismiss. For the reasons that follow, the HSBC defendants' and Maria Olivari's motions should be granted, and Druckman's motion should be denied.

## I. *BACKGROUND*

We assume the allegations of the Second Amended Complaint are true and summarize them only to the extent necessary to dispose of the defendants' motions.

### A. *Allegations in the Second Amended Complaint*

On September 16, 1994, the Schuhs entered into a note secured by a mortgage on their home. *See* Second Amended Complaint, filed Apr. 14, 2008 (Docket # 72) ("2d Am. Compl." or "complaint"), ¶ 6; Ex. A to 2d Am. Compl. The Schuhs admit they were in default on this note beginning in 1997. *Id.* ¶ 84.

In February 2004, an entity owned by the HSBC defendants informed the Schuhs that certain amounts were due and had to be paid in order to cure the Schuhs' default. *Id.* ¶¶ 46, 102; *see* Ex. L to 2d Am. Compl. On May 4, 2004, Druckman, on behalf of its client, filed an action in New York State court in Saratoga County to foreclose on the Schuhs' mortgage. 2d Am. Compl. ¶ 105. The state court granted a motion for summary judgment in that action in September 2004, and entered a judgment of foreclosure and sale on January 21, 2005. *See* 2d Am. Compl. ¶¶ 120, 125; Order for Summary Judgment and Reference, filed Oct. 5, 2004 (annexed as Ex. Q to 2d Am. Compl.); Judgment of Foreclosure and Sale, filed Jan. 11, 2005 (annexed as Ex. S to 2d Am. Compl.). The plaintiffs, sometimes *pro se* and sometimes represented by counsel, filed several motions attempting to stay the sale and set aside the judgment, all of which were eventually denied and consolidated into an appeal to the Third Department, which affirmed the lower court. 2d Am. Compl. ¶¶ 126, 138; *see Mortgage Elec. Registration Sys., Inc. v. Schuh,* 48 A.D.3d 838, 852 N.Y.S.2d 403 (3d Dep't 2008).[1]

In the meantime, at the foreclosure sale on March 23, 2006, Christopher Schuh repurchased his home for $141,251, and made an initial payment of $14,126. *See* 2d Am. Compl. ¶ 136; Terms of Sale, dated Mar. 23, 2006 (annexed as Ex. U to 2d Am. Compl.); Receipt for Partial Payment, dated Mar. 23, 2006 (annexed as Ex. V to 2d Am. Compl.). In October 2006, the plaintiffs received a letter from HSBC MS, which stated that $104,860 was needed to

---

**1.** Later, the Court of Appeals dismissed the Schuhs' appeal of the Third Department decision. *See* 10 N.Y.3d 951, 862 N.Y.S.2d 464, 892 N.E.2d 857 (2008). The Schuhs have recently been enjoined from bringing any further motions seeking to vacate the judgment of foreclosure. *See Mortgage Elec. Registration Sys., Inc. v. Schuh,* No. 04–1221 (Sup.Ct. Sept. 19, 2008) (annexed to Letter from Preston L. Zarlock to Hon. Lewis A. Kaplan, dated Oct. 27, 2008 (Docket # 95)).

discharge the mortgage by November 13, 2006, and that a per diem late fee of $17.2673 would be charged thereafter. *See* 2d Am. Compl. ¶ 144; HSBC Letter to Christopher Schuh, dated Oct. 24, 2006 (annexed as Ex. X to 2d Am. Compl.) ("HSBC Oct. 24 Letter"). On November 29, 2006, Druckman sent a letter to Schuh stating that the "payoff figures good through December 15, 2006," were $111,938.55 to HSBC MS, plus $13,250.00 to Druckman. *See* 2d Am. Compl. ¶ 148; Druckman Letter to Christopher Schuh, dated Nov. 29, 2006 (annexed as Ex. Y to 2d Am. Compl.) ("Druckman Nov. 29 Letter").

On December 15, 2006, $106,000 was deposited with the Saratoga County Clerk on behalf of the Schuhs. 2d Am. Compl. ¶ 151; Wood Deposit with the Court, Dec. 15, 2006 (annexed as Ex. Z–1 to 2d Am. Compl.). On January 10, 2007, the Schuhs deposited an additional $7,500 with the Saratoga County Clerk. *See* Schuh Deposit with the Court, dated Jan. 10, 2007 (annexed as Ex. Z–2 to 2d Am. Compl.); 2d Am. Compl. ¶ 151.

On January 19, 2007, the state court granted a stay of the sale of the Schuh home. 2d Am. Compl. ¶ 155. The state court subsequently directed that the monies deposited by the Schuhs with the referee of the March 23, 2006 sale, and with Saratoga County, be paid out to HSBC MS in a total "pay-off" amount of $106,867.15. Order, dated Mar. 6, 2007 (annexed as Ex. BB to 2d Am. Compl.) ("Ex. BB"); 2d Am. Compl. ¶¶ 156–57. The Order described this total as being comprised of "Unpaid Principal Balance, Interest to January 22, 2007, Property Preservation & Inspections, [and] Legal Fees & Costs." *Id.* The complaint asserts that this amount was "materially less than any of the demands" previously made by

Druckman on behalf of the defendants. 2d Am. Compl. ¶ 158.

HSBC MS thereafter sent the Schuhs a statement, dated April 4, 2007, indicating that the $106,867.15 payment had been received and allocated to "unapplied funds," and stating that there was an additional "total amount due" of $35,409.14 in fees and late charges. HSBC MS Statement, dated Apr. 4, 2007 (annexed as Ex. CC to 2d Am. Compl.); 2d Am. Compl. ¶¶ 161–63. The complaint characterizes this statement as including charges that were "barred by the judgment of foreclosure." 2d Am. Compl. ¶ 163. The complaint notes that "[t]here was a $10,090.56 disparity between the undifferentiated fees and expenses allowed in the distribution order ($21,955.25) and the amount claimed in the April 4, 2007 statement ($11,864.69)." *Id.* ¶ 164. On May 9, 2007, HSBC MS sent a letter to the Schuhs, apparently in response to an inquiry regarding the April 4 statement, stating that the April 4 statement was correct. HSBC MS Letter to Schuhs, dated May 9, 2007 (annexed as Ex. DD to 2d Am. Compl.); 2d Am. Compl. ¶ 166. The complaint asserts that the April 4 statement "was patently false since the indebtedness for the mortgage note had been satisfied by the Schuhs' payment into court and the order of distribution." 2d Am. Compl. ¶ 167.

### B. *Procedural History*

The Schuhs filed their original complaint in this Court on January 17, 2007. *See* Complaint, filed Jan. 17, 2007 (Docket # 1) ("Compl."). They filed an amended complaint on May 21, 2007. *See* Amended Complaint, filed May 21, 2007 (Docket # 17). In addition to the FDCPA claims, the original and amended complaints contained claims for violations of RICO and common law fraud *See id.*; Compl. The district court dismissed all the claims, but

permitted the Schuhs to replead the four FDCPA claims at issue here and any claims arising after the filing of the original complaint. *See* Order, filed Mar. 19, 2008 (Docket # 62) ("March 19 Order") (adopting *Schuh v. Druckman & Sinel, L.L.P.,* 2008 WL 542504 (S.D.N.Y. Feb. 29, 2008)).

The Schuhs filed the Second Amended Complaint on April 14, 2008. While this complaint did not assert RICO or common law fraud claims, it named as defendants parties unrelated to the claims the district court permitted the Schuhs to replead. At a conference on April 30, 2008, Judge Kaplan made clear that all claims against all defendants were dismissed except for the FDCPA claims against the HSBC defendants and Druckman. *See* Transcript, dated Apr. 30, 2008 (annexed as Ex. B to Declaration of Preston Zarlock, filed May 13, 2008 (Docket # 77) ("Zarlock Decl.")) ("Apr. 30 Tr."), at 9. Judge Kaplan also stated that it was unnecessary for the Schuhs to file a third amended complaint. *See id.* at 10.

Thus, at issue here are the Schuhs' allegations of FDCPA violations based on the following four documents:

(1) A statement sent by HSBC MS, dated October 24, 2006, indicating that the Schuhs owed $104,860.49 on their mortgage. *See* HSBC Oct. 24 Letter. The Schuhs allege that the representation that the Schuhs owed this money to HSBC was false, and that "[t]he fees claimed were in excess of those allowed by the mortgage note and/or the judgment of foreclosure." 2d Am. Compl. ¶ 194.

(2) A letter from Druckman, dated November 29, 2006, stating that the Schuhs owed $125,188.55 to pay off their mortgage as of December 15, 2006. *See* Druckman Nov. 29 Letter. The Schuhs allege that this was a "false representation," and that "[t]he fees claimed were in excess of those allowed by the mortgage note and/or the judgment of foreclosure." 2d Am. Compl. ¶ 194.[2]

(3) A statement from HSBC MS, dated April 4, 2007, this time stating that the Schuhs owed $35,409.14. *See* HSBC MS Statement, dated Apr. 4, 2007 (annexed as Ex. CC to 2d Am. Compl.). The Schuhs assert that "[b]y payment into court of more than the amount due, as well as the order of the Court directing payment, Plaintiffs were no longer indebted to HSBC." 2d Am. Compl. ¶ 194.

(4) A letter from HSBC MS, dated May 9, 2007, stating that the April 4, 2007 document was correct. *See* HSBC MS Letter to Schuhs, dated May 9, 2007 (annexed as Ex. DD to 2d Am. Compl.). The Schuhs repeat their assertion that "[b]y payment into court of more than the amount due, as well as the order of the Court directing payment, Plaintiffs were no longer indebted to HSBC." 2d Am. Compl. ¶ 194.

The Schuhs seek statutory, property and emotional distress damages in the amount of $4,000,000. 2d Am. Compl. ¶¶ 201–04.

Each of the defendants has moved to dismiss on grounds of *res judicata* and/or collateral estoppel, litigation privilege, failure to state a claim under Fed.R.Civ.P. 12(b)(6), and on statute of limitations grounds. In addition, Druckman has moved to dismiss for lack of jurisdiction under the *Rooker–Feldman* doctrine. *See* Memorandum of Law in Support of Defendants Druckman & Sinel, LLP's and Maria Olivari's ("The Druckman Firm") Motion

---

**2.** The complaint mistakenly identifies the date of this letter as "11/19/07." 2d Am. Compl. ¶ 194.

to Dismiss the Second Amended Complaint, filed May 16, 2008 (Docket # 84) ("Druckman Mem."), at 11–13.[3]

We begin by discussing the *Rooker–Feldman* doctrine inasmuch as it implicates subject matter jurisdiction.

## II. *THE ROOKER–FELDMAN DOCTRINE*

As was discussed in the Report and Recommendation previously issued in this matter, *Schuh*, 2008 WL 542504, at *4–7, the *Rooker–Feldman* doctrine stands for "the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), the Supreme Court held that the doctrine:

is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Id.* at 284, 125 S.Ct. 1517; *accord Hoblock*, 422 F.3d at 85.

■ In this Circuit, there are four prerequisites to application of the doctrine:

First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain[ ] of injuries caused by [a] state-court judgment[.] Third, the plaintiff must invit[e] district court review and rejection of [that] judgment[ ]. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced. . . .

*Hoblock*, 422 F.3d at 85 (internal quotation marks omitted; alterations in original). If all four requirements are met, federal subject matter jurisdiction is barred by *Rooker–Feldman*. *Id.*

The first and fourth requirements are "procedural" in nature, *id.*, and once they are met,

the application of the *Rooker–Feldman* doctrine turns on whether the second and third "substantive" requirements are met. And those substantive requirements . . . can be reduced to the following statement: "federal plaintiffs are not subject to the *Rooker–Feldman* bar unless they *complain of an injury caused by a state judgment*."

**3.** The HSBC defendants have filed the following papers: Memorandum of Law by the HSBC Defendants in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint, filed May 13, 2008 (Docket # 78) ("HSBC Mem."); Reply Memorandum of Law of the HSBC Defendants in Further Support of Their Motion to Dismiss Plaintiffs' Second Amended Complaint, filed June 5, 2008 (Docket # 90); Zarlock Decl.; Reply Declaration of Preston L. Zarlock, filed June 5, 2008 (Docket # 89).

Druckman has filed the following papers: Druckman Mem.; Reply Memorandum of Law in Further Support of Druckman & Sinel, LLP's and Maria Olivari's (The "Druckman Firm") Motion to Dismiss the Second Amended Complaint, filed June 5, 2008

(Docket # 92) ("Druckman Reply Mem."); Affirmation of Geoffrey W. Heineman in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint With Supporting Memorandum of Law, filed May 16, 2008 (Docket # 83).

The Schuhs filed the following papers in opposition: Plaintiffs' Memorandum in Opposition to Dismiss by Defendant HSBC Bank, filed May 29, 2008 (Docket # 87) ("Schuh HSBC Mem."); Plaintiffs' Memorandum in Opposition to Motion to Dismiss by Defendant Druckman & Sinel, LLP, filed May 29, 2008 (Docket # 88) ("Schuh Druckman Mem."); Plaintiffs' Appendix to Their Memorandum in Opposition to Motion to Dismiss by Defendant HSBC Bank (annexed to Schuh HSBC Mem.).

*McKithen v. Brown,* 481 F.3d 89, 97 (2d Cir.2007) (quoting *Hoblock,* 422 F.3d at 87).

■ Here, the Schuhs' complaint is that the four communications from the defendants falsely stated the amount that they owed to satisfy their mortgage debt and were inconsistent with the amount that the state court had stated they owed. *See* 2d Am. Compl. ¶ 194. Thus, Druckman incorrectly argues that "[p]laintiffs seek this Court's assistance in reversing the monetary obligations imposed upon them." Druckman Mem. at 12–13. In fact, the Schuhs' claims under the FDCPA in this Court do not challenge the validity of their obligations under the state court judgment. While the Court is well aware that the defendants assert that their statements of the amounts owing were accurate and consistent with the state court judgment, these are not the allegations of the complaint.

In sum, because the Schuhs do not "complain of an injury caused by a state judgment," *McKithen,* 481 F.3d at 97, the *Rooker–Feldman* doctrine does not apply. *See Todd v. Weltman, Weinberg & Reis Co., L.P.A.,* 434 F.3d 432, 437 (6th Cir. 2006) (FDCPA claim brought in federal court based on affidavit submitted in prior state court debt default proceedings not barred by *Rooker–Feldman* doctrine); *see also Wyles v. Excalibur I, LLC,* 2006 WL 2583200, at *2 (D.Minn. Sept. 7, 2006) ("when a debtor brings an action under the FDCPA, the action does not challenge the state court judgment itself, but rather challenges the debt collection practices that led to the judgment") (citing cases).

## III. *WHETHER THE HSBC DEFENDANTS ARE "DEBT COLLECTORS"*

One of the bases on which HSBC has moved to dismiss is that the complaint fails to state a claim because it does not allege that the HSBC defendants meet the statutory requirements of being "debt collectors."

### A. *Law Governing Motions to Dismiss*

A party may move for judgment pursuant to Fed.R.Civ.P. 12(b)(6) where the opposing party has "fail[ed] to state a claim upon which relief can be granted." Separately, Fed.R.Civ.P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under this rule, a complaint "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 237 (2d Cir.2007) (quoting *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (citations, internal quotation marks, and brackets omitted); *see also* 127 S.Ct. at 1966 (pleading must "possess enough heft to show that the pleader is entitled to relief") (citations, internal quotation marks, and brackets omitted). Thus, "a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007). As one case puts it, the factual allegations of a complaint must be

sufficient to render the claim "plausible." *Boykin v. KeyCorp,* 521 F.3d 202, 213 (2d Cir.2008) (citing *Iqbal v. Hasty,* 490 F.3d 143, 158 (2d Cir.2007)) (emphasis omitted).

On a motion to dismiss for failure to state a claim, all factual allegations in the complaint are accepted as true. *See Swierkiewicz,* 534 U.S. at 508 n. 1, 122 S.Ct. 992. While a court normally examines only these allegations on a motion to dismiss, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (citations omitted). In addition, matters of public record, such as court filings, may also be considered on such a motion. *See, e.g., Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004) (citations omitted).

### B. *Discussion*

The relevant provisions of the FDCPA apply only to the activities of a "debt collector." *See* 15 U.S.C. §§ 1692e, 1692f, 1692g. A "debt collector" is a person "who regularly collects ... debts owed ... another." 15 U.S.C. § 1692a(6).[4] In contrast, a "creditor" is a "person who offers or extends credit creating a debt," but "does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). "[C]reditors generally are not subject to the FDCPA," *Alibrandi v. Fin. Outsourcing Servs., Inc.,* 333 F.3d 82, 85 (2d Cir.2003), unless "the creditor 'in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts,' " *Maguire v. Citicorp Retail Servs., Inc.,* 147 F.3d 232, 235 (2d Cir.1998) (quoting 15 U.S.C. § 1692a(6)). As was noted in *Williams v. Citibank, N.A.,* 565 F.Supp.2d 523, 528 n. 6 (S.D.N.Y.2008), "[t]he FDCPA applies to debt collectors and not 'creditors' because debt collectors, unlike creditors, are not constrained in their actions by the risk that a negative reputation regarding debt collection practices might threaten their continued access to new borrowers." *Id.* (citing *Harrison v. NBD Inc.,* 968 F.Supp. 837, 841 (E.D.N.Y.1997) (discussing the legislative intent behind the FDCPA)).

■ The complaint fails to state a claim against the HSBC defendants because it fails to provide any facts that actively and plausibly support the conclusion that any of the HSBC defendants are "debt collectors" within the meaning of the statute. The only acts by any of the HSBC defendants that are alleged to have violated the FDCPA are the letters from HSBC MS. With respect to HSBC MS, nothing in the complaint suggests that HSBC MS regularly collects debts owed to "another." 15 U.S.C. § 1692a(6). The FDCPA excludes from its definition of "debt collector" not only officers or employees of a creditor working to collect a debt in the creditor's name, 15 U.S.C. § 1692a(6)(A), but also any entity acting as a debt collector for another entity where both entities are "related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts." 15 U.S.C. § 1692a(6)(B).

The complaint specifically alleges that all of the HSBC defendants are "affili-

---

**4.** A debt collector is also a person involved "in any business the principal purpose of which is the collection of any debts," 15 U.S.C. § 1692a(6), but plaintiffs have not relied on this provision.

ates." 2d Am. Compl. ¶ 43. The complaint does not allege facts showing that HSBC MS has the principal business of collecting debts or that it collects debts for some non-HSBC entity. Indeed, the complaint contains allegations to the contrary. It alleges that HSBC MS is a "servicer" of mortgages. 2d Am. Compl. ¶ 39. It further alleges that HSBC MS is the same entity as "Household International, Inc.," which is alleged to have the "primary business" of "consumer loans." 2d Am. Compl. ¶¶ 44, 46. Thus, nothing in the complaint shows that HSBC MS is debt collector within the meaning of the act.

The prior order in this matter limited plaintiffs' claims only to the "party that sent" the communication at issue, *see* March 19 Order at 4, and thus there is no need to address any of the other HSBC defendants. But even if we were to do so, the complaint is conclusory as to what specific violations of the FDCPA plaintiffs are alleging any of these other HSBC entities have engaged in, and they cannot be held responsible for the actions of any other entity merely based on vicarious liability. *See, e.g., Doherty v. Citibank (S.D.) N.A.,* 375 F.Supp.2d 158, 162 (E.D.N.Y. 2005). In any event, no facts are alleged in the complaint plausibly demonstrating that any of them is in the principal business of collecting debts and that they do so for unrelated entities. *See* 2d Am. Compl. ¶¶ 35–43.

The Schuhs argue that the HSBC defendants are debt collectors because "[o]ne who acquires a defaulted debt is a debt collector." Schuh HSBC Mem. at 7 (citing *Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534 (7th Cir.2003)). Whether a debt is in default at the time it is acquired by the person seeking to collect on it, however, is relevant only to an exception to the definition of "debt collector." *See* 15 U.S.C. § 1692a(6)(F). Because the Schuhs have failed to allege that HSBC is a "debt collector" in the first place, the statutory exception is irrelevant. *See Schuh v. Druckman & Sinel, L.L.P.,* 2008 WL 542504, at *12 n. 7 (S.D.N.Y. Feb. 29, 2008).[5]

In sum, the complaint must be dismissed against all the HSBC defendants. *See, e.g., Williams,* 565 F.Supp.2d at 530 (granting motion to dismiss for failure to state a claim where complaint under FDCPA failed to allege that entity "collects debts for other, unrelated entities or that its principal business is debt collection"); *see also In re Crippen,* 346 B.R. 115, 118 (Bkrtcy.E.D.Pa.2006) (rejecting conclusory allegations in a complaint regarding the defendant's status as a debt collector) (collecting cases).

## IV. CLAIM AGAINST DRUCKMAN

We turn next to Druckman's arguments in support of its motion to dismiss.

### A. Whether the Complaint Alleges That Druckman Violated the FDCPA

The claim against Druckman is based on it its November 29, 2006 letter to Christo-

---

**5.** The complaint contains a heading that states, "Necessity of discovery to determine the status of a debt collector." 2d Am. Compl. ¶ 77. The paragraphs under this heading explain that it is difficult to "ascertain who holds [the Schuhs'] note on any given day in time, and on whose behalf, any one of the various defendants are actually collecting for, a key determinant in establishing who is, and who is not, a debt collector pursuant to the FDCPA." *Id.* This statement does not relieve plaintiffs of the obligation to submit a complaint that contains factual allegations sufficient to withstand a motion to dismiss. In addition, the ownership of the Schuhs' own mortgage does not alter the Court's analysis with respect to the threshold question of whether the HSBC entities are "debt collectors" under the FDCPA.

pher Schuh regarding the amount of the debt owed, described as "payoff figures." *See id.* ¶ 194; Druckman Nov. 29 Letter. The letter also asserts that: "We are attempting to collect a debt and any information obtained will be used for that purpose." Druckman Nov. 29 Letter.[6]

Druckman makes several arguments as to why the complaint does not allege that the firm violated the FDCPA. *See* Druckman Mem. at 22–26.

Its first argument is unclear. *See id.* at 22. Its brief cites the case of *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir.2005), but without explanation as to how it relates to the allegations in the complaint. In any event, *Greco* is of no relevance to the Schuhs' claims because it involved a communication that allegedly mislead the consumer as to a law firm's involvement in the collection activity. *Id.* at 363–64. Here, there is no allegation that Druckman misrepresented its role. Rather, the violation alleged is that Druckman falsely represented the amount the Schuhs owed. 2d Am. Compl. ¶ 194.

■ Druckman next asserts that the Schuhs' FDCPA claim based on the November 29 letter fails because "Plaintiffs were fully aware that the Druckman firm was acting as counsel in the context of a vigorously contested foreclosure litigation." Druckman Mem. at 23. It is unclear, however, why this assertion is relevant to the question of whether a claim is

stated against Druckman and Druckman's brief provides no insight into this question. To the extent that Druckman may be arguing that attorneys are exempt from the FDCPA, that argument has been squarely rejected by the Supreme Court. *See Heintz v. Jenkins*, 514 U.S. 291, 294, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (FDCPA "does apply to lawyers engaged in litigation").

Druckman next asserts that "[p]laintiffs knew" that the letter "was a transmittal letter forwarding a payoff document prepared by the Druckman Firm's client at the requests of Plaintiffs." Druckman Mem. at 23. The circumstances regarding what plaintiffs "knew," and how the letter came into being, however, are not described in the complaint, and thus cannot be considered on a motion to dismiss.

■ Druckman points to the fact that its November 29 letter contained the following sentence: "The figures quoted in this statement are not to be considered an estoppel, and must be verified prior to acceptance of any payment." Druckman Mem. at 23 (capitalization omitted); *see also* Druckman Nov. 29 Letter. They argue that this statement shows that Druckman "discharged its duties in full compliance with all laws." Druckman Mem. at 23. It is unclear what is meant by this argument. Perhaps Druckman is arguing that the language necessarily meant that any false statement regarding the amounts owed did not constitute the "false repre-

---

6. The Schuhs' brief asserts that with respect to the Druckman firm, their violations took place in the context of not only the November 29 letter but also an October 24, 2006 letter to plaintiffs. *See* Druckman Mem. at 8. But with respect to the October 24 letter, the complaint alleges that this letter is actually "from HSBC," that it was merely "transmitted" by Druckman "to Mr. Schuh on behalf of the HSBC," and that it "was prepared by FIDELITY." *See* 2d Am. Compl. ¶ 195. Indeed, the letter itself reflects that it is from HSBC and

addressed to Christopher Schuh. *See* HSBC Oct. 24 Letter. In light of the absence of any allegation showing an independent violation of the FDCPA by Druckman with respect to this letter, the letter cannot form the basis of an FDCPA claim against Druckman. The FDCPA imposes liability on persons committing violations of the statute, and cannot be read so broadly as to impose liability based on mere "transmittal" of a false communication regarding a debt where that communication is sent to the debtor from another person.

sentation of . . . [the] amount . . . [of] any debt." 15 U.S.C. § 1692e(2)(A). Given the declarative statement that certain figures were "payoff figures" and that they were "good" through a certain date, the Court cannot say that the mere statement that the figures would have to be verified "prior to acceptance of any payment" made any allegedly false statement regarding the payoff amounts any less false.

█ Druckman argues in conclusion that it "can have no liability under the FDCPA, as it was acting at all times under the direction and control of HSBC, MERS, or Fidelity." Druckman Mem. at 25; *see also* Druckman Reply at 8–9. This argument relies on the law of agency and the unremarkable proposition that "where there is a disclosed principal-agent relationship and the contract relates to a matter of the agency, the agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to be personally bound." *Leonard Holzer Assocs. v. Orta,* 250 A.D.2d 737, 737, 672 N.Y.S.2d 915 (2d Dep't 1998). Putting

aside the problem that the claim does not involve a "contract," the FDCPA specifically defines "debt collector" as one who collects debts owed "another." 15 U.S.C. § 1692a(6). Thus, the statute specifically contemplates that liability may be imposed on a debt collector who acts on behalf of some other entity.

In a footnote, Druckman adverts to the fact that the Schuhs' loan agreement required the Schuhs to pay collection costs. Druckman Mem. at 22 n. 17. Druckman does not explain the relevance of this argument. Perhaps the argument is meant to suggest that (1) the November 29 letter to the Schuhs accurately stated the payoff amount and (2) the only basis for the Schuhs' claim that the amount is inaccurate is that the amount incorrectly included collection costs. If this is the argument, Druckman did not explicitly make it. In any event, dismissal cannot be granted based on this argument because the complaint does not state that the mere inclusion of collection costs rendered the payoff amount in the November 29 letter false.[7]

---

**7.** Druckman makes three arguments for the first time in its reply brief.

First, it disputes several statements made in the Schuhs' brief regarding the proper amount of attorney's fees that could have been collected by Druckman. *See* Druckman Reply at 2, 4–6. It thus appears to argue that the November 29 letter was not in fact false because it validly asserted the amount owed. Because this argument was made for the first time in the reply brief, we decline to consider it. *See, e.g., Fisher v. Kanas,* 487 F.Supp.2d 270, 278 (E.D.N.Y.2007) (citing cases); *Estate of Ungar v. Palestinian Auth.,* 451 F.Supp.2d 607, 611 (S.D.N.Y.2006); *cf. ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.,* 485 F.3d 85, 97 n. 12 (2d Cir.2007) (declining to consider argument raised for the first time in a reply brief). Plaintiffs have had no opportunity to respond to this argument. Moreover, the question of the accuracy of the letter cannot be adjudicated on the current record.

Druckman also argues that any error in the November 29 letter was unintentional.

Druckman Reply at 12–14. This argument likewise is untimely and, in any event, constitutes a factual defense that cannot be decided on this motion to dismiss.

Finally, Druckman argues that debt collectors can never be sued for foreclosing on a mortgage. Druckman Reply at 9–10. Again, we decline to address this argument as it was raised for the first time in a reply brief. We note further that cases have distinguished between efforts to enforce a security interest through non-judicial means (held not to come within the FDCPA) and efforts undertaken to seek a judgment personally against a debtor (held to come within the FDCPA). *See, e.g., McDaniel v. South & Assocs., P.C.,* 325 F.Supp.2d 1210, 1216–18 (D.Kan.2004); *see also Maynard v. Cannon,* 2008 WL 2465466, at *3 (D.Utah June 16, 2008) ("Several courts have found that attorneys foreclosing on mortgages fell under the requirements of the FDCPA.").

### B. *Statute of Limitations*

Druckman moves to dismiss on statute of limitations grounds. The Second Circuit has held:

> Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted....

*Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir.1989); *accord Francis v. Blaikie Group*, 372 F.Supp.2d 741, 743 n. 2 (S.D.N.Y.2005) ("Defenses based on statutes of limitations are properly brought under Rule 12(b)(6) as motions to dismiss for failure to state a claim on which relief can be granted."), *aff'd*, 177 Fed.Appx. 121 (2d Cir.2006); *Fezzani v. Bear, Stearns & Co., Inc.*, 384 F.Supp.2d 618, 630 (S.D.N.Y.2004) ("it is proper to dismiss claims when it is apparent from the complaint and documents referenced therein that they are barred by the applicable statute of limitations").

■ Under the FDCPA, a claim for a violation must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Because the Schuhs filed this action on January 17, 2007, any violation that occurred prior to January 17, 2006 is time-barred.

The letter from Druckman was sent on November 29, 2006, which is within the one-year period. Druckman, however, argues that any claim under the FDCPA accrued when there were first "efforts ... to foreclose" in "2004," and that the statute of limitations on any FDCPA claims ended in February 2005. Druckman Mem. at 18. But the initial filing of the foreclosure suit is no longer at issue in this case. The only viable claim of a violation of the FDCPA is the allegedly false statement of the payoff amount in the November 29 letter.

In support of its argument that the statute of limitations has run, Druckman cites two cases: *Sierra v. Foster & Garbus*, 48 F.Supp.2d 393, 395 (S.D.N.Y.1999); and *Calka v. Kucker, Kraus & Bruh, LLP*, 1998 WL 437151, at *3 (S.D.N.Y. Aug. 3, 1998). Each of these cases, however, involved an entity that committed a time-barred act alleged to have been in violation of the FDCPA. *Id.* The plaintiff in each case then sought to revive the statute of limitations period by complaining about a later act in furtherance of the time-barred act. *Id.* The courts rejected this effort but took pains to note that they did so because there was no separate violation of the FDCPA. *Id.* Thus, the court in *Calka* notes that there had been no "*new* misrepresentation" of the amount at issue in the lawsuit. 1998 WL 437151, at *3 (emphasis added). *Sierra* similarly noted that "this is not a case where defendants have sent a series of threatening letters, each of which violate the FDCPA and only some of which are time-barred." 48 F.Supp.2d at 395.

Here, the only false statement alleged to have been made by Druckman is the statement in the November 29 letter as to the payoff amount. The complaint does not allege that this false statement represents the same violation as any prior communication from by Druckman-or any other party. Indeed, the complaint assumes the validity of the lawsuit and of the resulting judgment of foreclosure. Instead, it alleges that the November 29 letter was an effort to collect that was inconsistent with the lawsuit and resulting judgment. Accordingly, the allegations of the complaint do not show that plaintiffs' claim is untimely.

### C. *Res Judicata*

■ Druckman argues that the claim against it is barred by the doctrine of *res*

*judicata.* Druckman Mem. at 14–15. "Under the doctrine of *res judicata*, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 265 (2d Cir.1997) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir.1994)); *accord McKithen*, 481 F.3d at 104. "[F]ederal courts ... accord state judgments the same preclusive effect those judgments would have in the courts of the rendering state...." *Hoblock*, 422 F.3d at 93; *accord* 28 U.S.C. § 1738; *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986); *Green v. Montgomery*, 219 F.3d 52, 55 (2d Cir. 2000).

■ "New York law has adopted a 'transactional approach' to [the *res judicata* doctrine]." *McKithen*, 481 F.3d at 104. Under this approach, "[o]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981) (citation omitted); *accord McKithen*, 481 F.3d at 104; *Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir.1997); *see also Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 202 F.Supp.2d 126, 135–36 (S.D.N.Y.2002) (applying New York transactional approach). Furthermore, New York *res judicata* doctrine also bars any "matter that could have or should have been raised in a prior proceeding arising from the same factual grouping." *Ferris*, 118 F.3d at 126 (internal citations and quotation marks omitted).

■ Here, the FDCPA claim against the Druckman firm is independent from the transaction that was adjudicated in the state court—that is, the foreclosure on the mortgage and the amounts due under the Schuhs' loan. This is not a case where the Schuhs' complaint about the letter is that it seeks to collect on an invalid judgment— an argument that might face a *res judicata* bar since both the letter and the judgment would arise out of the same disputed transaction. Rather, the Schuhs *accept* the validity of the judgment and the underlying debt and complain instead that the November 29 letter makes false statements about the judgment in violation of the FDCPA.

Moreover, the November 29 letter was sent almost two years after the state court's judgment, which was entered on January 21, 2005. Plainly, any FDCPA claim based on the November 29 letter could not have been brought in the original action since the letter was not sent until after the judgment was entered.

To counter this obvious problem, Druckman is reduced to simply noting that the foreclosure action involved "the dispute of interest owed and fees and expenses incurred during the underlying foreclosure proceeding," Druckman Mem. at 14, and that the litigation over this matter continued while on appeal to the Third Department, *id.* at 14–15. But Druckman points to nothing suggesting that the FDCPA claim regarding the November 29 letter "could have" been brought before the Third Department. To do so, Druckman would have had to cite to New York case law that permits a cause of action under the FDCPA to be instituted in the Appellate Division while a case is on appeal. Druckman cites no such law and the Court presumes there is none.

Druckman emphasizes that the Schuhs' complaints regarding the November 29 letter were mentioned in the Schuhs' appellate brief, perhaps meaning to argue that the Schuhs actually brought their FDCPA claim in the Third Department. *See*

Druckman Reply at 7–8. But the fact that the Schuhs complained regarding these letters in briefing to the Third Department does not show that the Schuhs either did or could have raised a cause of action under the FDCPA for the first time in that court.

In sum, the FDCPA claim is not barred by the doctrine of *res judicata.*

### D. *Collateral Estoppel*

 "[A] federal court must apply the rules of collateral estoppel of the State in which the prior judgment was rendered." *Sullivan v. Gagnier,* 225 F.3d 161, 166 (2d Cir.2000). Under New York law the "doctrine [of collateral estoppel] applies only if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." *City of New York v. Welsbach Elec. Corp.,* 9 N.Y.3d 124, 128, 848 N.Y.S.2d 551, 878 N.E.2d 966 (2007) (citation omitted); *see also Fandy Corp. v. Lung–Fong Chen,* 265 A.D.2d 450, 697 N.Y.S.2d 90 (2d Dep't 1999) (same); *Elias v. Rothschild,* 29 A.D.3d 448, 448–49, 815 N.Y.S.2d 89 (1st Dep't 2006) (dismissal warranted on collateral estoppel grounds "[b]ecause the issues raised in this action were also actually and necessarily decided in the earlier case after plaintiff was afforded a full and fair opportunity for their litigation"); *accord Hoblock,* 422 F.3d at 94. "It is not necessary that the issue have been 'actually litigated' in the sense that evidence have been offered on the point." *Richardson v. City of New York,* 2004 WL 325631, at *2 (S.D.N.Y. Feb. 20, 2004). New York requires only that the issue "have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *Halyalkar v. Board of Regents,* 72 N.Y.2d 261, 268, 532 N.Y.S.2d 85, 527 N.E.2d 1222 (1988). Additionally, "collateral estoppel can be invoked, either offensively or defensively by a non-party to the litigation." *Windowizards, Inc. v. S & S Improvements, Inc.,* 11 Misc.3d 130(A), 2006 WL 543050, at *2 (Sup. Co.App. Term Feb. 27, 2006); *see also Schwartz v. Public Adm'r of Bronx County,* 24 N.Y.2d 65, 70, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969) ("We have ... discarded, as irrelevant to proper consideration of [collateral estoppel] ... the fact that there may or may not have been any significant jural relationship between the party seeking to invoke the doctrine and the prior victor.").

 Druckman argues that "[t]o the extent that Plaintiffs seek recovery arising out of matters that the state court has already considered, decided and affirmed, the [complaint] is also barred by collateral estoppel." Druckman Mem. at 16. Here, of course, there is nothing in the complaint or anywhere else in the record that suggests that the correct payoff amount as of November 29, 2006 was "actually determined" by the state court. To the contrary, the complaint alleges that the payoff amount was *inconsistent* with the judgment rendered by the state court. 2d Am. Compl. ¶¶ 144, 148, 156, 158. It may be that plaintiffs are incorrect on this point, but it is impossible to answer this question on a motion to dismiss.

Druckman's brief might be construed as arguing that the Third Department actually decided whether the amount in the November 29 letter was correct. Druckman Mem. at 16–17. Druckman refers to the following portion of the Third Department's decision in support of this contention:

> [A]s for defendants' challenge to the amount due, we note that this would not have been a defense to the motion for summary judgment, but only a factor to

be reconciled in the referee's or court's calculation of the amount owed. Accordingly, we find that [the] Supreme Court properly denied defendants' motion to vacate the order granting summary judgment.

*Mortgage Elec. Registration Sys.,* 48 A.D.3d at 841, 852 N.Y.S.2d 403. This statement does not show that the Third Department "actually determined" that the amount in the November 29 letter from Druckman was correct. At best, the Third Department found only that the Schuhs' challenges to the amounts claimed to be due were irrelevant to the Schuhs' appeals. Therefore, on the current record, the Schuhs' FDCPA claim is not precluded by the doctrine of collateral estoppel.[8]

### E. *Litigation Privilege*

■ Druckman asserts that November 29 letter is protected by "litigation privilege" under New York law. Druckman Mem. at 20. The case they cite in support of this proposition, however, is a diversity case and thus was applying New York substantive law. *See Aequitron Medical, Inc. v. Dyro,* 999 F.Supp. 294 (E.D.N.Y. 1998). Here, by contrast, the Schuhs' claim arises under federal law.

More aptly, Druckman cites two cases that applied the federal doctrine affording immunity from suit to witnesses in court proceedings. *See Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Beck v. Codilis & Stawiarski, P.A.,* 2000 WL 34490402 (N.D.Fla. Dec. 27, 2000). As was stated in *Briscoe,* "witnesses ... are absolutely immune from civil liability based on their testimony in judicial proceedings." 460 U.S. at 328, 103 S.Ct. 1108. In *Briscoe,* the Supreme Court reasoned that, without immunity, a witness's testimony might be tainted by the fear of a future suit, and such fear would obstruct the "ascertainment of truth." *See id.* at 332–33, 103 S.Ct. 1108. Here, of course, the Schuhs make no claim based on any person's testimony in judicial proceedings. Rather, the November 29 letter was sent to the Schuhs in an attempt to collect on a previously-entered judgment. Attempting to collect on a judgment is not a step in the "ascertainment of truth" that requires the protection that immunity from suit affords. Accepting Druckman's argument would mean that the FDCPA would not apply to efforts by debt collectors to collect debts based on judgments. The statute's definition of the term "debt," however, explicitly recognizes that it applies to obligations that have been "reduced to judgment." 15 U.S.C. § 1692a(5).

Thus, the Schuhs' claim is not precluded by litigation privilege.

### V. *CLAIM AGAINST MARIA OLIVARI*

Other than general and conclusory allegations regarding Maria Olivari, an attorney at Druckman, nothing in the complaint shows that she had any connection to the November 29 letter. Accordingly, any claim against Olivari must be dismissed.

### *Conclusion*

The HSBC defendants' motion to dismiss (Docket # 76) should be granted. The motion to dismiss (Docket # 80) of Druckman should be denied and the mo-

---

**8.** Nothing herein is meant to suggest that a fuller record might not result in the Schuhs' claim being barred by collateral estoppel. If Druckman can show that the amount in the November 29 letter was authorized by the state court judgment, the Schuhs plainly will be barred from asserting that the amount was false. And it may be that very limited discovery and a summary judgment motion can resolve this question. This question cannot be decided, however, on this motion to dismiss.

tion to dismiss of Maria Olivari should be granted.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Kaplan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Dated: January 21, 2009

New York, New York